EL PUEBLO DE PUERTO RICO, apelado, *v.* ANDRÉS DE JESÚS COLÓN, acusado y apelante.

Número: CR-86-13     Resuelto: 2 de octubre de 1987

*Wilfredo Padilla Soto*, abogado del apelante; *Rafael Ortiz Carrión, Procurador General* y *Anabele Rodríguez, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Andrés De Jesús Colón, el acusado en el caso de epígrafe, apela de la sentencia dictada en su contra por el Tribunal Superior, Sala de Caguas, donde se le encontró culpable del delito de mutilación el 10 de febrero de 1986 y se le impuso una pena de cuatro años en probatoria y pena de restitución de cinco mil dólares ($5,000).

Los hechos que motivan esta convicción se desarrollaron en la Carr. Núm. 30 del Municipio de Juncos, el 23 de noviembre de 1984 a las 6:00 A.M., mientras el apelante, Sr. Andrés De Jesús Colón se dirigía a su trabajo. El apelante transitaba por el carril izquierdo de dos para discurrir en la misma y al percatarse que había un automóvil que bloqueaba su carril, cambió al carril derecho y allí impactó por la parte de atrás el auto marca Champ que era empujado por la parte trasera por el Sr. Enrique Rabell Cortés, quien quedó atrapado entre ambos autos. El apelante y el Sr. Mario Diadone Gómez sacaron al señor Rabell de entre el auto del apelante y del auto Champ que pertenecía al señor Diadone. El señor Rabell fue llevado al Hospital Regional de Caguas y de allí se le transfirió al Centro Médico de Río Piedras donde, debido a la severidad de las heridas sufridas en las piernas, las mismas tuvieron que ser amputadas.

El auto que obstaculizaba el carril izquierdo de la carretera pertenecía al señor Rabell, quien se había visto involucrado en un accidente con el auto del señor Diadone, momentos antes de que fuera impactado por el apelante.

Plantea como cuestión de derecho el apelante que: "Incidió el Honorable Tribunal de Instancia al evaluar la suficiencia de la prueba, dictar un fallo de culpabilidad y aplicar el derecho." Solicitud de Apelación, pág. 2.

El apelante fue convicto por el delito de mutilación, el cual está tipificado en el Art. 96 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4033, como sigue:

Toda persona que *ilegal* y *maliciosamente* privara a otra de un miembro de su cuerpo, o lo mutilare, desfigurare o inutilizare, o le cortare o mutilare la lengua, sacare un ojo, sacare [*sic*] la nariz, oreja o labio, desfigurare su rostro o alterare permanentemente la apariencia de su rostro o inutilizare permanentemente su capacidad para oír, ver o hablar, será sancionada con pena de reclusión por un término

fijo de doce (12) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de ocho (8) años. El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida, o ambas penas. (Énfasis nuestro.)

El delito de mutilación según tipificado en nuestro Código Penal requiere los elementos de ilegalidad y malicia para que se consuma el mismo. El término malicia según definido en el propio Código Penal en el Art. 7 inciso (19), 33 L.P.R.A. sec. 3022(19), significa "la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa y la consciente naturaleza del mismo". "Es pues, una forma de intención que requiere ausencia de justa causa y consciencia de la naturaleza delictiva del acto. La misma es elemento constitutivo de algunos delitos, *e. g.* asesinato (Art. 82), mutilación (Art. 96), difamación (Art. 118)." D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, San Juan, Ed. Inst. Desarrollo del Derecho, 1983, pág. 162. "La malicia, que constituye elemento del delito de mutilación en todas las modalidades, puede probarse mediante una intención específica de mutilar o una intención general a ser inferida de la naturaleza de las lesiones resultantes de los actos intencionales del acusado. *Pueblo* v. *Castañón Pérez*, 114 D.P.R. 532, 540 (1983)." D. Nevares-Muñiz, *Código Penal de Puerto Rico, Revisado y comentado*, San Juan, Rev. C. Abo. P.R., 1986, pág. 171.

En *Pueblo* v. *Cordero*, 82 D.P.R. 379 (1961), se planteó el problema del elemento de la malicia utilizado en el delito de mutilación y allí se dijo que la malicia premeditada no era un elemento esencial del delito y no se requiere prueba de premeditación o deliberación, al citar los casos de *People* v. *Wright* 29 P. 240 (Cal. 1892) y *Boulding*

v. *State* 177 P.2d 152 (Okla. 1947). Dispone *Pueblo* v. *Cordero*, supra, pág. 382, además, que "la malicia puede deducirse de la conducta del acusado y las circunstancias que rodean la comisión del delito, ya que para éstos fines malicia es sinónimo del propósito o designio de causar daño. ... Uno de los objetivos del legislador al definir este delito fue evitar la brutalidad alarmante en los encuentros y ataques personales, y de ahí que se presuma la *malicia de la atrocidad del acto en sí*, que entre otros casos se deduce de la naturaleza del instrumento o medio utilizado para la agresión". (Escolios omitidos y énfasis nuestro.)

En el voto separado del Juez Asociado Señor Irizarry Yunqué en *Pueblo* v. *Castañón Pérez*, supra, pág. 545, se menciona el grado de malicia requerido en el delito de mutilación y compara con la imprudencia crasa o temeraria establecida en el Art. 87 del Código Penal, 33 L.P.R.A. sec. 4006,(1) y señala que:

> Como puede verse de la lectura de ambos textos, causar la muerte de una persona al conducir un vehículo de motor, mediando "imprudencia crasa o temeraria", y privar a una persona de un miembro de su cuerpo de manera "ilegal y maliciosamente" son ambos delitos graves, pero el legislador concibe que el segundo es más grave que el primero pues, mientras establece una pena de tres años de prisión para el primero, señala una pena tres veces mayor —nueve años de prisión— para el segundo. Nadie concebiría que, tomado en abstracto, privar a una persona de un miembro de su cuerpo sea más grave desde el punto de vista del Código Penal que

---

(1) "Cuando en la muerte ocasionada por una persona al conducir un vehículo de motor mediare imprudencia crasa o temeraria, se impondrá pena de reclusión por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dos (2) años.

"La imprudencia crasa o temeraria es aquella de tal naturaleza que demuestre un absoluto menosprecio de la seguridad de los demás bajo circunstancias que probablemente produzcan daños a éstos y no significa una mera falta de cuidado." 33 L.P.R.A. sec. 4006.

privarla de la vida. El derecho a la vida es uno de los derechos fundamentales reconocidos por nuestra Constitución. Carta de Derechos, Art. II, Sec. 7.

La única explicación que le encuentra el Juez Irizarry Yunqué a la diferencia en las penas establecidas en estos delitos es que "[o]bviamente 'imprudencia crasa o temeraria' y 'malicia' no son sinónimos. Así, quien *lance* un vehículo de motor contra un grupo de personas '*ilegal* y *maliciosamente*' y con dicho acto cause la muerte de una de dichas personas comete el delito de asesinato tipificado en el Art. 82 (33 L.P.R.A. sec. 4001). Si con dicho acto priva a una de dichas personas de un miembro de su cuerpo, comete mutilación". (Escolios omitidos y énfasis nuestro.) *Pueblo* v. *Castañón Pérez*, supra, pág. 545.

Los tratadistas LaFave y Scott ilustran con unas situaciones de hecho el estado mental que se requiere para imputarle a una persona la comisión del delito de mutilación.[2] Entre las situaciones de hechos que discuten, está una muy parecida al caso ante nuestra consideración.

(d) The mental element required for mayhem can not be quite so exactly stated. (1) Of course, one who (without justification) intends a specific injury of the mayhem type, and who accomplishes that exact injury, is guilty, as where A with a knife intentionally cuts of B's left ear. However, (2) one may intend one sort of mayhem-injury and achieve another sort, as where A, swinging his axe at B's right hand with intent to sever it, misses that hand but cuts off B's left hand or leg or puts out an eye. Or (3) one may intend bodily injury but not have in mind any mayhem type of injury; thus A intentionally knocks down B who, to A's surprise, falls against a root and loses an ear. Progressing further down the road leading from greater fault to lesser fault, one encounters the situations of the person who (4) recklessly or

[2] W. R. LaFave y A. W. Scott, *Substantive Criminal Law*, Minnesota, West Pub. Co., 1986, Vol. II, Sec. 7.17(d), págs. 322–324.

negligently or (5) in the commission (or attempted commission) of an unlawful act causes another to suffer an unintended injury of the mayhem type—as where A, *by reckless driving, or by driving on the wrong side of the road in violation of statute or ordinance, runs his car against motorist B, inflicting injuries so severe that B requires the amputation of his leg or suffers the loss of his eyesight.*

The answer in these situations depends to a great extent upon the wording of the mayhem statute. If the statute punishes one who "unlawfully" or "maliciously" dismembers or disfigures, then one is guilty in situation (3) above, i.e., where he intentionally injures another, thereby unintentionally causing an injury of the mayhem type. On the other hand, a statute of the modern type punishing one who, "with intent to disable or disfigure another," successfully disables or disfigures him is not violated by one with such an indefinite state of mind; this statute would require the mental element involved in situation (2) above—i.e., an intent to maim, though not necessarily to cause the specific maiming injury actually inflicted. *As to the states of mind referred to in situations (4) and (5) above— involving reckless or unlawful conduct by the defendant— it seems quite clear that mayhem is not committed under these circumstances, in the absence of some special wording in the mayhem statute.* (Escolios omitidos y énfasis nuestro.) W. R. LaFave y A. W. Scott, *Substantive Criminal Law*, Minnesota, West Pub. Co., 1986, Vol. II, Sec. 7.17(d), págs. 322–324.

Como podemos observar en las situaciones de hecho cuatro (4) y cinco (5), donde inclusive el ejemplo prevé una situación donde se guía imprudentemente, elemento que no está presente en el caso ante nos, los tratadistas sostienen que bajo un estatuto como el nuestro, no se configura el delito de mutilación.

En *Pueblo* v. *Castañón Pérez*, supra, decidimos que la intención que requiere el Art. 96 del Código Penal en el delito de mutilación es la general definida en el Art. 15 inciso (b) del Código Penal, 33 L.P.R.A. sec. 3062(b). Dicho artículo dispone:

(b) Cuando el resultado sin ser querido ha sido previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión.

La doctora Nevares-Muñiz en su obra de *Derecho Penal Puertorriqueño, op. cit.*, pág. 158, señala que:

El concepto de intención general del ordenamiento puertorriqueño no requiere prueba específica respecto a la intención, como en los casos de intención específica, sino que el comportamiento sea tal que demuestre una intención general de cometer el acto tipificado como delito. Tal intención se determinará de las circunstancias generales que rodean la conducta. El criterio determinante es si el resultado delictivo fue una consecuencia natural o probable de los actos del acusado. La persona se responsabiliza por el resultado de su conducta, aunque no lo haya querido, siempre que aquél sea previsible. El criterio de previsión a utilizar será el del hombre/mujer prudente y razonable, sin importar lo que el sujeto particular previó.[3]

Sobre la intención general la posición en el *common law* en materia criminal es la siguiente: "that a person is 'presumed to intend the natural and probable consequences of his acts' ... the so-called presumption of intent does not impose upon the accused any duty to produce evidence. Rather, it merely means that the fact-finder may (but need not) conclude under those circumstances that A intended to kill B. Thus the matter is reduced to an *inference* (or *'permissive* presumption') rather than a true presumption of the mandatory sort". (Énfasis nuestro.) LaFave y Scott, *op. cit.* Vol. I, pág. 316.

---

[3] *Pueblo* v. *Castañón Pérez*, 114 D.P.R. 532, 547 (1983); G. J. Brau, *A Dog Much Confused: The Definition of Intention and Art. 5(B) of the Penal Code of Puerto Rico*, 54 Rev. Jur. U.P.R. 55–56 (1985).

■ "A tales efectos, la jurisprudencia indica que la intención maliciosa y criminal se infiere de la manera con que se intenta cometer un acto ilegal con el propósito de perjudicar a otro. Dicha intención se manifiesta por las circunstancias relacionadas con el delito. La ley supone que toda persona intenta las consecuencias naturales de sus actos, por lo que cuando el daño corporal es resultado de la conducta ilegal de una persona, se presupone su intención a menos que ésta demuestre lo contrario. *Pueblo* v. *Astacio*, 23 D.P.R. 842 (1916); *Pueblo* v. *De León* 102 D.P.R. 446 (1974)." Nevares-Muñiz, *Derecho Penal Puertorriqueño, op. cit.*, pág. 158.

■ Resolvemos que configurar el delito de mutilación mientras se conduce un vehículo de motor tiene que alegarse y probarse que el acto fue intencional. Si la prueba demuestra que el acto fue negligente[4] no procede una convicción por el delito de mutilación.

Según las normas establecidas en cuanto a la intención requerida en el delito de mutilación y cómo se puede inferir la misma al diferenciar los hechos del caso de autos de los hechos que motivaron la decisión del caso de *Pueblo* v. *Castañón Pérez*, supra, es inescapable concluir que el apelante no tuvo la intención que se requiere para cometer el delito de mutilación.

En *Pueblo* v. *Castañón Pérez*, supra, pág. 541, concluimos que se cometió el delito de mutilación, ya que se podía inferir claramente de las circunstancias particulares de ese caso la intención del Art. 15(b) del Código Penal, 33 L.P.R.A. sec. 3062(b), ya que:

La prueba presentada por el Estado en el caso de autos señala al recurrido conductor de la lancha operándola a

---

[4] La negligencia que daría lugar a una convicción por homicidio involuntario, cuando la víctima fallece.

marcha veloz en una playa concurrida por bañistas, en zona llana de baño, de s[ó]lo 6 pies de hondura. Ocurrido el encuentro de lancha y bañista que tuvo como consecuencia la pérdida por cercenamiento del brazo izquierdo de Kaufer Medina, surge la figura prima facie de delito intencional de mutilación que define el Art. 15(b) del Código Penal: un resultado que sin ser querido pudo ser previsto por el recurrido piloto como consecuencia natural y probable de su acción. La previsibilidad del grave daño al bañista inducida por la consciencia del riesgo que conlleva navegar a 50 m.p.h. en zona de sólo 6 pies de profundidad donde había numerosas personas en el agua, en nuestro medio debe ser además preocupación constante de los deportistas de lancha por las frecuentes protestas públicas de bañistas contra la penetración de embarcaciones al agua llana que es propiamente zona de baño y natación. La forma y lugar en que el recurrido conducía su lancha, según las determinaciones del juzgador, constituía *no s[ó]lo base de previsibilidad del accidente catastrófico, y sí además, conducta de alta peligrosidad, notoria y repudiada en nuestros balnearios.* (Énfasis nuestro.)

De las circunstancias del caso de *Pueblo* v. *Castañón Pérez*, supra, se podía prever que se le ocasionaría daño a algún bañista. No así del caso de autos. La intención requerida en el delito de mutilación no se podía determinar de las circunstancias generales que rodearon la conducta del apelante. El Sr. Andrés De Jesús Colón tomó las debidas precauciones ante el estado de la carretera por donde transitaba, ya que había neblina y la visión era pobre; mientras se dirigía hacia su trabajo se vio involucrado en un lamentable accidente, el cual no pudo evitar. Se trata aquí de un ciudadano que se dirigía a su trabajo y al encontrarse que el carril por donde transitaba estaba obstruido, su reacción fue cambiar de carril para no chocar, con la mala suerte de que el otro carril también lo estaba y se produjo el accidente. El apelante, según la prueba presentada, no iba ni al máximo de velocidad permitida por

ley en ese tipo de carretera. Aun si se presume, según los hechos de este caso, que el apelante fuera negligente, no surge que tuviera la intención requerida por el Art. 15(b) del Código Penal, 33 L.P.R.A. sec. 3062(b), ya que el resultado no pudo ser previsto como consecuencia natural o probable de su acción y, sobre todo, no se puede inferir el elemento de la malicia que está tipificado en el delito de mutilación.

No se nos escapa la realidad de que la norma aquí seguida afecta negativamente el derecho del Estado a procesar por la vía penal a aquellos conductores que por su imprudencia y negligencia causen serias lesiones corporales a víctimas inocentes. Pero, precisamente, por ser un proceso penal tenemos que atenernos al principio de legalidad. Corresponde a la Legislatura y al Ejecutivo tomar las medidas pertinentes en protección de las víctimas.

*Se revocará la sentencia y se absolverá al acusado.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita.