EL PUEBLO DE PUERTO RICO, recurrido, *v.* EDWIN OLIVERO RODRÍGUEZ, acusado peticionario.

*Número:* O-81-455 *Resuelto:* 30 de marzo de 1982

*Héctor A. Colón Cruz, Procurador General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo; *Alejandro Torres Rivera,* abogado del acusado y peticionario.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El peticionario Edwin Olivero Rodríguez fue denunciado, declarado culpable y sentenciado[1] por el Tribunal de Distrito, Sala de Río Piedras, del delito de difamación estatuido en el Art. 118 del Código Penal, 33 L.P.R.A. sec. 4101, consistente en que ". . . allá en o para el día 10 de marzo de 1980, en *Hato Rey,* que forma parte de la jurisdicción del Tribunal de Distrito de Puerto Rico, ilegal, voluntaria, *maliciosa* y criminalmente a través de una carta escrita a maquinilla desacreditó e impugnó la integridad y buena fama de la Sra. Idida Morales Burgos, de 42 años de edad, a quien el aquí imputado, le *dijo que ella estaba planeando o cuajando un plan terrorista de derecha para atentar contra su vida y que dicha perjudicada habló con un mafioso* para el supuesto plan. Además, le dijo a la Sra. Idida Morales Burgos, que ella le tumbaba la cabeza a sus adversarios políticos, haciendo *públicamente* el imputado, la referida carta". (Énfasis suplido.)

No conforme apeló al Tribunal Superior, el cual oportunamente dictó la siguiente sentencia confirmatoria:

No hay duda de que la hoja suelta publicada por el imputado contiene imputaciones difamatorias hacia la denunciante.

La cuestión se reduce, pues, a determinar si dicha publicación es privilegiada. Para que exista el privilegio,

---

[1] Fue condenado a satisfacer una multa de $100 y dos meses de cárcel a ser cumplidos bajo el régimen de sentencia suspendida.

conforme a lo dispuesto en el artículo 119 del Código Penal, precisa que se pruebe la verdad del hecho imputado. La prueba al respecto, consistente en el testimonio de la Sra. Lourdes Cintrón, *no mereció crédito al Ilustrado Juez de Instancia y no habremos de alterar su apreciación de la prueba. Por otro lado, no consideramos que la prueba aportada justifique concluir que el denunciante sea una "figura pública".* La libertad de expresión no puede ser fundamento para justificar el ataque abusivo a la honra, reputación y a la vida privada que se hace de la denunciante. *Pueblo v. Rodríguez Hernández,* 86 D.P.R. 660, 674. (Énfasis suplido.)

Expedimos *certiorari* para examinar la juridicidad de tales dictámenes. En síntesis, el peticionario nos argumenta: (1) que la "perjudicada", como persona que ocupa la posición de Presidente de distrito con jurisdicción y relación estrecha sobre 16 Consejos de Residentes —integrados por consejos que representan residenciales públicos y comunidades adscritas a la Corporación de Renovación Urbana y Vivienda (CRUV) entre los cuales está el de Manuel A. Pérez, cuyo presidente es el peticionario— y como activista del Partido Nuevo Progresista (PNP), es una "figura" pública y como tal, correspondía al Ministerio Fiscal probar afirmativamente su culpabilidad; (2) que no se probó malicia real; (3) que no se demostró que actuara con "conocimiento de la falsedad del hecho o con craso y temerario menosprecio de la verdad"; se dirimió erróneamente la prueba; y se aplicó equivocadamente el derecho.

## I

A los fines de evaluar estos señalamientos resumiremos la prueba desfilada. La del Ministerio Fiscal —consistente de los testimonios de la perjudicada Idida Morales Burgos, Juan Rivera Pérez y Humberto Aponte González, y como prueba documental, la comunicación— demostró la posición de Presidente de distrito de la CRUV de la Sra. Morales, su condición de miembro activo del PNP; que no

residía en Manuel A. Pérez; que en febrero de 1980 se celebró una asamblea de residentes conducente a que la comunidad eligiera un nuevo Consejo de Residentes; que a la sazón, el peticionario Olivero Rodríguez era el Presidente de ese Consejo de Residentes y nuevamente candidato; que ella asistió a dicha asamblea y allí se produjo un choque de concepciones con el "peticionario"; que mantiene cierta relación con los presidentes de los distintos consejos; que nunca se reunió con el peticionario; que una vez éste la invitó a su casa; que nunca más ha hablado ni ha tenido problemas con él; que tuvo conocimiento de la carta y de su contenido que es falso; que la misma fue circulada; que le ha afectado su reputación; que una empleada de la CRUV le llevó una copia; que desconocía conceptos tales como "terrorismo de derecha", "fascismo", "comunismo", "socialismo", a pesar de haber estudiado a nivel universitario; y que no discriminaba.

Por su parte el peticionario presentó el testimonio de la Srta. Lourdes Cintrón, Técnico Legal de la Corporación de Servicios Legales de Puerto Rico y amiga suya, quien atestó que lo asesoró; que conoce a la perjudicada; que para febrero de 1980 en una residencia de Río Piedras escuchó cuando la señora Morales habló con "Papo" y le dijo que necesitaba un "trabajo, que había que tumbarle la cabeza a un hijo de puta que la estaba jodiendo mucho en el Consejo de Residentes de Manuel A. Pérez"; que dicho sujeto asintió y ella le avisó al peticionario.

Con esta prueba se produjo la convicción. Ninguno de los foros de instancia creyó el testimonio de la Defensa. El Tribunal de Distrito estaba en mejor posición para dirimir la credibilidad: vio y oyó a los testigos deponer, observó sus expresiones, comportamiento, énfasis, ademanes y otros elementos. Al igual que el Tribunal Superior hemos de respetar esas conclusiones.

■ La evidencia creída, antes relacionada, demuestra más allá de toda duda razonable la comisión del delito de

difamación del Art. 118. (²) Según apuntáramos, al foro de instancia no le mereció crédito la declaración de la testigo presentada por el peticionario sobre la veracidad del incidente de la conversación. Concurren los elementos esenciales: una intención ulterior real y dañosa indicativa de la falsedad del hecho y el menosprecio de la verdad ("malicia" *animus injuriandi*) que se manifiesta a través de un medio directo de difusión pública (carta circulada personalmente), que comunica información tendente a denigrar la valía personal. No estamos ante un caso marginal cuyo contenido sea la sutil ironía, expresión de mal gusto o grosera, simple impertinencia u otras expresiones análogas, sino aquellas de naturaleza ofensiva, de carácter inequívoco acusatorias del delito de conspiración (plan terrorista de "atentar contra su vida [y] habló con un mafioso"). Esa carga y contenido infamante se extiende para socavar la honradez, integridad y virtud atribuyéndole a las gestiones de la señora Morales "chanchullos" en el Consejo Estatal, palabra que en su lenguaje general y corriente desvalora la honra y dignidad personal y ciertamente expone al menosprecio público por significar "manejo ilícito para conseguir un fin, y especialmente para lucrarse". *Diccionario de la Lengua Española*, 1970, pág. 405. Adviértase que no hay evidencia de que la perjudicada fuera una persona propensa, a actuar violenta o ilegalmente, ni que estuviera asociada con individuos de dudosa reputación, ni que tuviera un historial relacionado con la solución de asuntos de manera turbia. Tampoco de que el peticionario hiciera un esfuerzo mínimo para

---

(²) Reza:

"Toda persona que maliciosamente a través de cualquier medio, o de cualquier modo, públicamente deshonrare, o desacreditare, o imputare la comisión de hecho constitutivo de delito o impugnare la honradez, integridad, virtud o buena fama de cualquier persona natural o jurídica, o denigrare la memoria de un difunto, será sancionada con pena de reclusión por un término que no excederá de seis meses o multa que no excederá de quinientos dólares, o ambas penas a discreción del Tribunal." 33 L.P.R.A. sec. 4101.

constatar la veracidad de la información a base de identificar o tratar de averiguar el carácter o propensión criminoso del personaje aludido como "Papo". No hay prueba de que en el desarrollo previo de las labores del Consejo de Manuel A. Pérez —u otros consejos de residentes— existiera la práctica de recurrir a algún tipo de violencia como medio para dirimir y solventar discrepancias o influenciar el resultado de las elecciones de las asambleas.

Ante estas circunstancias concluimos que no se cometieron los errores referentes al grado y apreciación de la prueba.

## II

El peticionario sostiene que la señora Morales era una "figura pública" según la doctrina prevaleciente, con relación a las comunidades en que se desempeñaba. Tampoco tiene razón.

El concepto "figura pública" ha sido examinado por este Tribunal en *García Cruz* v. *El Mundo, Inc.*, 108 D.P.R. 174 (1978), y *Torres Silva* v. *El Mundo, Inc.*, 106 D.P.R. 415 (1977). En ambos reconocimos su evolución doctrinaria, dinámica y los elementos integrantes peculiares que deben concurrir para rubricar tal condición, a saber:

... 1) especial prominencia en los asuntos de la sociedad, 2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público y 3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas. *Time, Inc.* v. *Firestone*, supra a la pág. 443; *Gertz* v. *Robert Welch, Inc.*, supra a las págs. 342, 345 y 351; *Curtis Publishing Co.* v. *Butts*, supra a las págs. 145–164.

*Gertz* define la figura pública en los siguientes términos:

"En su mayor parte aquellos que alcanzan este status han asumido roles de especial prominencia en los asuntos de la

sociedad. Algunos ocupan posiciones de tal poder e influencias que se consideran figura pública para todo propósito. Mas comúnmente, aquellos clasificados como figura pública se han lanzado a la palestra de una controversia pública en particular para influir en las soluciones de las cuestiones envueltas." *Gertz,* a la pág. 345. *Torres Silva,* supra, pág. 422.

A tono con ese enfoque los candidatos a cargos públicos han sido equiparados a funcionarios públicos independientemente del resultado de la elección. *García Cruz,* supra, pág. 179.

■ Vemos, pues, que la noción de figura pública está estrechamente vinculada —por razón de la posición oficial, poder o envolvimiento en los asuntos públicos— a la adquisición de relieve, prominencia, fama o notoriedad especial o general en la comunidad que, como corolario, de modo significativo le permite de ordinario a una persona cierto acceso a los medios efectivos de comunicación para exponer, adelantar y debatir sus puntos de vista ante la opinión pública, y como resultado corre el riesgo de estar más expuesta al escrutinio, atención e interés público en contraste con un ciudadano privado. Aunque el concepto tiende a excluir los límites estrechos de un sector exiguo de la comunidad[3] —en el caso de autos, en que el único

---

[3] Así, en *Torres Silva,* supra, pág. 423, dijimos:

"¿Puede afirmarse que el recurrente Torres Silva es una figura pública *conforme los criterios* que hemos reseñado? Torres Silva es un Director de Orquesta conocido y, sin duda, respetado y admirado en el mundo de la farándula. *Más aún, su nombre puede ser familiar en algunos sectores de la comunidad, pero no tiene, sin embargo, tal notoriedad y prominencia en la vida puertorriqueña, en los asuntos de nuestra sociedad, que lo convierta en una figura pública.* Tampoco se ha lanzado a la palestra pública en una controversia sobre el problema de las drogas que es el asunto al que se refiere la información difamatoria que dio motivo a este pleito." (Énfasis suplido.)

Ese enfoque es el que ha prevalecido en el Tribunal Supremo federal. A tal efecto, en *Hutchinson* v. *Proxmire,* 443 U.S. 111 (1978), se resolvió que un científico, especialista en el área de la conducta emocional, recipiente de un subsidio federal y que había publicado varios escritos profesionales sobre sus estudios, no había entrado a la arena de la discusión pública y por tanto *no* era figura pública. De igual modo, en *Time, Inc.* v. *Firestone,* 424 U.S. 448 (1976), se

trasfondo es el residencial Manuel A. Pérez— su vigencia es materia de evaluación casuística, cualitativa y cuantitativamente en función de los factores antes esbozados.

 En virtud de lo expuesto coincidimos con las salas de origen en que la señora Morales —aunque presuntamente conocida en el residencial Manuel A. Pérez— no reúne los requisitos de figura pública enunciados.

*Se confirmará la sentencia.*

El Juez Asociado Señor Torres Rigual concurre en el resultado sin opinión y el Juez Asociado Señor Díaz Cruz concurre en el resultado por los fundamentos expuestos en su opinión concurrente en *Torres Silva* v. *El Mundo, Inc.*, 106 D.P.R. 415, 428 (1977). El Juez Presidente Señor Trías Monge disintió sin opinión.

decidió que una dama divorciada de uno de los miembros de una familia prominente de industriales acaudalados de los Estados Unidos —conocida ella en los diversos sectores de la sociedad y clase deportiva de Palm Beach, Florida— no era figura pública, aun cuando se había sometido a unas conferencias de prensa durante el proceso de divorcio. Idéntica solución prevaleció en *Gertz,* supra, con referencia a un abogado de Chicago asociado con un caso prominente, autor de varios libros y artículos jurídicos, activo y conocido en los asuntos comunitarios.