# 2003 DTA 148

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

EL PUEBLO DE PUERTO RICO
Recurrido

v.

ABEL NAZARIO GONZALEZ
Peticionario

Núm. KLCE-03-00744

San Juan, Puerto Rico, a 15 de septiembre de 2003

Panel sustituto integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Cotto Vives

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

El peticionario Abel Nazario González solicita revisión de una resolución emitida en corte abierta el 7 de mayo de 2003 por el Tribunal de Primera Instancia, Sala de Yauco, en el procedimiento criminal que se ventila ante dicho foro contra el peticionario por una infracción al Art. 118 del Código Penal de Puerto Rico, por el delito de difamación, 33 L.P.R.A. sec. 4101.

Mediante el dictamen en cuestión, el Tribunal denegó una moción de desestimación presentada por el peticionario.

El 2 de julio de 2003, emitimos una resolución acogiendo el recurso presentado por el peticionario y concedimos término al Estado para expresarse en torno a los planteamientos presentados por éste. El Estado compareció por escrito, en respuesta a dicha orden, representado por el Procurador General.

En auxilio de nuestra jurisdicción, hemos ordenado la paralización de los procedimientos.
Revocamos.

## II

El peticionario, según se conoce, es alcalde del Municipio de Yauco y líder del Partido Nuevo Progresista en dicha municipalidad. La denuncia en su contra está basada en hechos ocurridos en Yauco el 11 de agosto de 2002.

Según se desprende del récord, ese día ocurrió un incidente en el municipio entre los seguidores del alcalde y el Sr. Edison Burgos Montes, identificado como seguidor del Partido Popular Democrático. ■ Luego del incidente, el peticionario fue entrevistado por el periodista Gaspar Orengo de la emisora de radio *"La Buena del Sur"*.

Al peticionario se le imputa que, durante la entrevista mencionada, manifestó que el Sr. Edison Burgos Montes era *"un mafioso"*, que *"bregaba con drogas"* y que el Sr. Burgos estaba molesto con el peticionario porque el peticionario *"le había parado los puntos de drogas"*. La entrevista fue grabada y difundida al día siguiente por la referida estación.

Al escuchar las manifestaciones del alcalde, el Sr. Burgos se quejó ante las autoridades. El Sr. Burgos hizo gestiones para conseguir copia de la grabación, la cual el periodista Orengo no le quiso facilitar de primera intención. Eventualmente, el Sr. Burgos Montes obtuvo copia de la grabación.

El 14 de enero de 2003, se presentó una denuncia contra el peticionario ante el Tribunal de Primera Instancia, por el delito de difamación, 33 L.P.R.A. sec. 4101. El Tribunal de Primera Instancia escuchó el testimonio del Sr. Burgos Montes, quien presentó, además, copia de la grabación de la entrevista obtenida por él. Luego de considerar esta prueba, el Tribunal de Primera Instancia determinó que existía causa probable para arrestar al peticionario por el delito mencionado.

El Sr. Gaspar Orengo no fue presentado como testigo durante la vista para la determinación de causa probable para el arresto. El caso fue señalado para la vista en sus méritos.

Oportunamente, el peticionario presentó una moción solicitando la desestimación de la denuncia. El peticionario planteó que las expresiones realizadas por él resultaban constitucionalmente protegidas, porque el Sr. Burgos Montes era una figura pública en Yauco, asociada al Partido Popular Democrático. El peticionario señaló que el referido Art. 118 del Código Penal resultaba inconstitucional, de su faz, en su aplicación a expresiones de este tipo, por lo que la denuncia no le imputaba delito alguno. También alegó que el Estado no había presentado evidencia suficiente para establecer que el peticionario había tenido la intención de que sus expresiones fuesen publicadas.

El Ministerio Público se opuso a la moción de desestimación del peticionario, alegando que el Sr. Burgos no era una figura pública.

El Tribunal de Primera Instancia procedió a celebrar una vista evidenciaria, la que tuvo lugar el 7 de mayo de 2003. Las partes presentaron varios testigos.

El primer testigo presentado por el peticionario fue el agente Roberto Galarza, quien investigó la querella

del Sr. Burgos.

El agente Galarza declaró sobre los detalles de su investigación. Declaró que conocía al Sr. Edison Burgos con anterioridad, que éste se dedicaba a hacer remolques, que era gruero y que la Policía muchas veces lo ocupaba. Manifestó que el Sr. Burgos también se dedicaba a la publicidad en apoyo al P.P.D. Que estuvo en la publicidad de un candidato de apellido Vivaldi. ██

El 12 de agosto de 2002, el Sr. Burgos se querelló por lo que había escuchado en una grabación. El día anterior, ocurrieron unos sucesos y Burgos fue parte en esos sucesos. El agente Galarza no investigó si el alcalde estaba en la emisora ese día haciendo expresiones contra Burgos. No tiene conocimiento personal, ni sabe qué fue lo que escuchó Burgos.

Según el testigo, el Sr. Burgos es conocido en Yauco, aunque expresó que desconocía si era por la actividad proselitista. Cuando hay campañas políticas, Burgos anuncia.

Durante el contrainterrogatorio, declaró que en ningún momento Burgos ha sido candidato por algún partido. El lo conocía porque era un comerciante y trabajaba para su empresa. Desconoce si la guagua la usaba para el partido político o para otros fines. No es asesor de político ni lo ha escuchado por la radio haciendo expresiones de naturaleza partidista.

El testigo Julio Alicea declaró que era asistente administrativo del municipio de Yauco. Trabaja en esa posición hace 10 años. Hace 42 años que vive en Yauco. Conoce a Edison Burgos desde hace años porque estuvieron juntos en la política. El también pertenecía al mismo partido. Pasquinaban, llevaban propaganda en Yauco. Edison hablaba en los mítines. De eso hacía como 8 años.

El testigo declaró que Edison tenía una guagua que tiene bocinas y bregaba con la promoción por el pueblo, por las urbanizaciones y por los campos. El no estaba en la guagua con Edison, pero se encontraban en el Comité. Edison montaba las tarimas, montaba los micrófonos, hablaba y daba las buenas noches y presentaba al candidato que fuera, en ocasiones, y se iba. Eso era en el pueblo; en general, eran actividades públicas, de mucha gente. No lo ha escuchado por radio.

Según el testigo, a Edison lo conoce casi todo Yauco porque siempre ha estado activo en la política. El 11 de agosto se encontraba en la Calle Muñoz Rivera; cuando lo escuchaba hablar, Edison atacaba al alcalde y hablaba malísimo de él. Se refería a él con palabras obscenas.

A preguntas del fiscal, declaró que era del Partido Popular, que Burgos lo que hacía era dar las buenas noches, presentar al candidato y se iba. En el Comité, atacaba al alcalde. Escuchó al adversario hablar mal del alcalde. También escuchó a otras personas hacer manifestaciones contra el alcalde; esas personas también son conocidas. Edison no se ha lanzado como candidato de ningún partido. Lo conoce porque iba, montaba el micrófono, dabas las buenas noches, presentaba al candidato y se iba.

En el redirecto declaró que Burgos estuvo como 3 ó 4 años haciendo expresiones contra el alcalde; el sonido era bien fuerte. Edison es bien conocido en Yauco.

El testigo Arturo Pérez declaró que trabajaba en el municipio de Yauco desde 1981. Residía en la Barriada Lluberas hacía 47 años. Conoce a Edison de la campaña políticas de hace aproximadamente 8 años; antes lo conocía como gruero. El testigo declaró que él había estado en política toda la vida, que él era un político y que conocía a Edison de la campaña de Pedro Jaime. ██ En la política, pasquinaban, anunciaban, montaban la tarima. Para esa fecha, Burgos tenía una guagua roja con equipo para anunciar política. Cuando había una actividad, la avisaban y Edison la anunciaba. Iban por diferentes barrios de Yauco. Todo el tiempo estaba con

ellos.

El testigo manifestó que él entendía que Burgos era un activista político en Yauco. Compartían en actividades políticas. Burgos anunciaba el mitín y probaba el equipo anunciando. Si había un maratón, también lo anunciaba. Lo hacía por ayudar al partido. Declaró que Edison nunca había sido candidato, que él recordara. El no estuvo en la campaña de Vivaldi. No sabe la participación que tuvo Edison.

A preguntas del Fiscal declaró que muchas veces se pone una grabación y los que hablan mayormente no se identifican. Muchas veces, estas personas son la voz de propaganda. Burgos utilizaba el equipo para pasarlo, desconoce si le pagaban, si había un interés pecuniario por realizar estas tareas. El siempre estaba con ellos. Muchas veces iban y en el Café él hablaba por la radio en apoyo de un candidato. No recuerda las veces que lo hizo. Siempre era haciendo campaña por un candidato.

El testigo Francisco Feliciano declaró que era supervisor de mantenimiento en el municipio. Trabajaba allí hace 32 años. Vive en Yauco desde 1955.

El testigo indicó que conoce a Edison porque cuando pertenecía al P.P.D., Burgos le hacía la propaganda a Pedro Jaime. En la de ahora tenía una guagua roja. Ahora no sabe, no se montó en la guagua con él. Cada vez que había un mitín, Burgos era el encargado. No lo escuchó hablar por radio.

El peticionario ofreció otros testigos como prueba acumulativa. El Fiscal declinó utilizarlos.

Como testigo del Ministerio Público, declaró el perjudicado, Edison Burgos Montes.

El testigo declaró que tiene un negocio de grúa, ha residido en Yauco. Siempre ha tenido equipo pesado y grúa. Más nada. Nunca ha sido candidato a posición política alguna. Su participación en política, tanto en el P. N.P. como en el P.P.D. era seguidor de los candidatos. Que los sigue, pero no es político. Actualmente, no tiene equipo de amplificación. Lo prestaba a los políticos.

Conoce al peticionario desde la escuela porque estudiaban en la misma escuela superior para la misma época.

Escuchó la grabación. Fue al cuartel para formalizar una querella por lo que escuchó. Habló con Gaspar, que fue quien hizo la entrevista. Conoce a Gaspar desde que éste fue candidato a alcalde por el P.N.P. Le dijo que necesitaba copia de la grabación y Gaspar le dijo que no se la podía dar, que hablara con Neftalí y que si él se la quería dar, que con él no había ningún problema. Habló con Neftalí y le entregaron un cassette. Luego fue al cuartel. El mantuvo custodia de la cinta. Se la entregó a la Juez.

El testigo manifestó que conocía a Vivaldi y que no era seguidor de ningún partido, sino que iba por candidaturas.

El testigo Miguel Cordero declaró que residía en la Barriada Lluberas. Conoce a Edison por ser compañeros de trabajo. Lo conoce hace como 20 ó 25 años. Trabajaba en Western Auto, donde Edison hacía los remolques.

Edison es una persona tranquila; no es reconocida en el pueblo de Yauco. No lo ha escuchado hablar por radio o por la prensa. Lo conoce como comerciante. Nunca lo ha escuchado en propaganda política y no pone pasquines.

A base de la prueba desfilada, el Tribunal declaró sin lugar la moción del peticionario.

En su resolución emitida en corte abierta, el Tribunal concluyó que el perjudicado no era una figura pública, por lo que los cargos presentados contra el peticionario no confrontaban objeción alguna de naturaleza constitucional. La ilustrada Sala recurrida expresó:

"*En términos [de] si es o no el señor perjudicado una figura pública, ciertamente [en] la política en P.R. son muchas las personas que participan, cientos de miles que participan en la política ayudando a los candidatos, participando en marchas, pasquinando; ..., pero realmente eso que hace una persona privada se convierta en una figura pública ..., especial prominencia en los asuntos de la sociedad, capacidad para ejercer influencia y persuasión en asuntos de interés público, participación activa en la discusión de controversias públicas, específicamente con el propósito de inclinar la balanza en la resolución de las cuestiones involucradas... conlleva una profundidad mucho mayor, porque si no, cientos de miles de puertorriqueños serían figuras públicas.*"

El Tribunal consideró que la prueba había establecido que el perjudicado tampoco era ni podía equipararse a un funcionario público:

"*[E]s importante si el Sr. Burgos había corrido para algún puesto político o no, porque si ese fuese el caso, el Tribunal Supremo [de Puerto Rico] ... [ha] equiparado los candidatos a puestos públicos a ... funcionarios públicos. Ahí hubiera podido ser un funcionario público, pero ciertamente todas las actividades que se han explicado hasta la saciedad por todos los testigos en este caso con relación a las actividades del Sr. Burgos ... este Juez no las equipara a figura pública y menos se ha pasado prueba de que es un funcionario público.*"

El Tribunal denegó la moción del peticionario.

Insatisfecho con este dictamen, el peticionario acudió ante este Tribunal.

### III

En su recurso, el peticionario plantea que el Tribunal de Primera Instancia erró al no desestimar los cargos en su contra. Alega que la aplicación del Art. 118 del Código Penal a la situación de autos resultaría contraria a la garantía constitucional a la libre expresión. Señala, además, que la determinación de causa probable para su arresto fue inválida, porque el Estado no presentó prueba alguna que tendiera a establecer que el peticionario autorizó la publicación de las manifestaciones realizadas por él, no habiéndose ofrecido el testimonio del periodista Gaspar Orengo, quien fue la persona que realizó la grabación.

El citado Art. 118 del Código Penal dispone:

"*Toda persona que maliciosamente a través de cualquier medio, o de cualquier modo, públicamente deshonrare, o desacreditare, o imputare la comisión de hecho constitutivo de delito o impugnare la honradez, integridad, virtud o buena fama de cualquier persona, natural o jurídica, o denigrare la memoria de un difunto, será sancionada con pena de reclusión por un término que no excederá de seis (6) meses, pena de multa que no excederá de cinco mil (5,000) dólares o pena de restitución, o cualquier combinación de éstas, a discreción del tribunal. De igual forma, el tribunal podrá imponer la pena de prestación de servicios en la comunidad en lugar de la pena de restitución.*"

33 L.P.R.A. sec. 4101.

El término "*maliciosamente*", empleado en el precepto, denota la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa y la consciente naturaleza del mismo. 33 L.P.R.A. sec. 3022 (19); véase, además, *Pueblo v. De Jesús Colón*, 119 D.P.R. 482, 485 (1987); *Pueblo v. Castañón Pérez*, 114 D.P.R.

532, 536 (1983); *Pueblo v. Méndez Ramos*, 108 D.P.R. 59, 63 (1978).

La **intención**, a su vez, está definida por el Art. 15 del Código Penal, que establece que un delito es intencional cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión o cuando el resultado, sin ser querido, ha sido previsto por la persona como consecuencia natural o probable de su acción u omisión. 33 L.P.R.A. sec. 3062; véase, *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188, 193-194 (1986); *Pueblo v. Castañón Pérez*, 114 D.P.R. a la pág. 536.

Conforme a lo anterior, el Art. 118 castiga a toda persona que "*maliciosamente*" [viz., intencionalmente], entre otras conductas, "*imputare la comisión de hecho constitutivo de delito*." 33 L.P.R.A. sec. 4101; véase, *Pueblo v. Olivero Rodríguez*, 112 D.P.R. 369, 370-373 (1982).

Coincidimos con la parte peticionaria en torno a que, a la luz de su redacción, el artículo en cuestión resulta inconstitucional, de su faz, en cuanto a manifestaciones relacionadas a funcionarios públicos o figuras públicas.

En efecto, el Tribunal Supremo de los Estados Unidos ha resuelto que las expresiones de contenido difamatorio, dirigidas contra personas que caen dentro de estas categorías, gozan de protección bajo la Primera Enmienda a la Constitución de los Estados Unidos. Los estados no pueden proveer remedio alguno contra aquellos que realizan este tipo de manifestación, salvo que el actor hubiera realizado las mismas, a sabiendas de que eran falsas o con grave menosprecio ("*reckless disregard*") de si eran falsas o no. *New York Times v. Sullivan*, 376 U.S. 254, 279-280 (1964); *Garrison v. Lousiana*, 379 U.S. 64, 74-75 (1964); *Rosenblatt v. Baer*, 388 U.S. 75, 86-88 (1966); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155 (1967); *Gertz v. Welch*, 418 U.S. 323, 344-345 (1974).

Se requiere, de este modo, no meramente que el autor de las expresiones hubiera actuado con la intención de difamar a aquél que es objeto de la manifestación, sino que hubiese actuado con "*malicia real*" ("*actual malice*"). *New York Times v. Sullivan*, 376 U.S., a la págs. 279-280; *Time v. Hill*, 385 U.S. 374, 394-395 (1967).

La malicia real no se presume, sino que tiene que ser establecida mediante prueba clara y convincente. *New York Times v. Sullivan*, 376 U.S. a la págs. 283-285; *Bose Corp. v. Consumers Union*, 466 U.S. 485, 514 (1984); *Anderson v. Liberty Lobby*, 477 U.S., 242, 257 (1986).

Este estándar resulta aplicable a procedimientos por difamación de naturaleza tanto civil como criminal. *Garrison v. Lousiana*, 379 U.S., a las págs. 74-75 ("*only those false statements made with the high degree of awareness of their probable falsity demanded by New York Times may be the subject of either civil or criminal sanctions*").

Estas doctrinas han sido incorporadas a nuestro ordenamiento por el Tribunal Supremo de Puerto Rico, bajo la Sección 4 del Art. II de la Constitución de Puerto Rico, véanse, *Pérez v. El Vocero de Puerto Rico, Inc.*, ___ D.P.R. ___ (1999), **99 J.T.S. 160**, a la pág. 265; *Acevedo v. Western Digital Caribe, Inc.*, 140 D.P.R. 452, 460 (1996); *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315, 327 (1994); *Villanueva v. Hernández Class*, 128 D.P.R. 618, 640-642 (1991); *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685, 692-693 (1994); *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174, 180 (1978); *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734, 738 (1975); véase, además, *Pueblo v. Olivero Rodríguez*, 112 D.P.R. a las págs. 374.

El Tribunal Supremo de Puerto Rico ha resuelto que en casos de difamación, no basta con la formulación de una afirmación desnuda de que una publicación fue maliciosa, sino que se tiene que probar la existencia de malicia real con prueba clara y convincente. *Garib Bazán v. Clavell*, 135 D.P.R. 475, 484 (1994); *Clavell v. El Vocero de P.R.*, 115 D.P.R. a la pág. 696; *García Cruz v. El Mundo, Inc.*, 108 D.P.R. a la pág. 180.

Hay que establecer que el actor tenía serias dudas sobre la certeza de la información. *Garib Bazán v. Clavell*, 135 D.P.R. a la pág. 484; *García Cruz v. El Mundo, Inc.*, 108 D.P.R. a las págs. 180-181. La mera existencia de mala voluntad o de odio no satisface de por sí el grado requerido de la prueba de malicia. *Garib Bazán v. Clavell*, 135 D.P.R. a las págs. 484-485; *García Cruz v. El Mundo, Inc.*, 108 D.P.R. a la pág. 181.

Consideramos, a la luz de estas normas, que el citado Art. 118 resulta efectivamente inconstitucional.

Dicho precepto, según indicado, castiga la imputación pública de, entre otras cosas, la comisión de un hecho constitutivo de delito. Aunque el artículo requiere que lo anterior sea hecho de forma intencional (viz, "*maliciosamente*"), el artículo no incorpora la exigencia constitucional de que el actor actúe, como tal, con conocimiento de la falsedad de la imputación o con grave menosprecio de su posible falsedad, cuando la manifestación está relacionada a un funcionario público o una figura pública. ■

El artículo guarda silencio sobre este particular, y tampoco distingue entre manifestaciones relacionadas a personas privadas y aquéllas dirigidas contra funcionarios públicos y figuras públicas, cuyas manifestaciones, según hemos indicado, gozan de una protección constitucional especial. Estos defectos hacen que el estatuto resulte inconstitucional, de su faz, en cuanto a su aplicación a manifestaciones dirigidas contra funcionarios públicos y figuras públicas.

Otros foros ya han llegado a la misma conclusión, ordenando a los agentes del Estado abstenerse de poner en vigor el estatuto contra funcionarios públicos. Véase, *De Jesús Mangual v. Rotger-Sabat*, 317 F.3d 45 (1er Cir. 2003); *Santarrosa v. Diaz Alicea*, KPE-02-2852 (sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, emitida el 25 de febrero de 2003).

En la situación de autos, según hemos visto, el Tribunal de Primera Instancia entendió que los defectos mencionados en el estatuto no impedían el procedimiento contra el peticionario, por cuanto la persona objeto de las manifestaciones en cuestión (el Sr. Burgos Montes), no es un funcionario público ni una figura pública, no gozando dichas manifestaciones de protección constitucional particular alguna. Compárese, *Pueblo v. Olivero Rodríguez*, 112 D.P.R. a las págs. 372-373.

El Tribunal Supremo de Puerto Rico ha explicado que:

"*[L]a noción de figura pública está estrechamente vinculada -por razón de la posición oficial, poder o envolvimiento en los asuntos públicos- a la adquisición de relieve, prominencia, fama, notoriedad especial o general en la comunidad que, como corolario, de modo significativo le permite de ordinario a una persona cierto acceso a los medios efectivos de comunicación para exponer, adelantar y debatir sus puntos de vista ante la opinión pública, y como resultado corre el riesgo de estar más expuesta al escrutinio, atención e interés público en contraste con un ciudadano privado.*"

*Garib Bazán v. Clavell*, 135 D.P.R. a la pág. 483; *Pueblo v. Olivero Rodríguez*, 112 D.P.R. a la pág. 375; véase, además, *Gertz v. Welch*, 418 U.S., a la pág. 345.

Existen diversos tipos de figura pública; la persona que por su posición oficial, su poder o su señalado envolvimiento en los asuntos públicos ha alcanzado fama o notoriedad en la comunidad; la persona que voluntariamente participa en una contienda o controversia pública; y la persona que involuntariamente se convierte en un personaje público. Hay, además, otras modalidades, tales como las personas acusadas de delito, criminales y personas asociadas con figuras públicas. *González Martínez v. López*, 118 D.P.R. 190, 195 (1987); *García Cruz v. El Mundo, Inc.*, 108 D.P.R., a la pág. 181; *Curtis Publishing Co. v. Butts*, 388 U.S., a la pág. 155; *Gertz v. Welch*, 418 U.S., a la pág. 345; *Time, Inc. v. Firestone*, 424 U.S., 448, 453-454 (1976).

El Tribunal Supremo de Puerto Rico ha aclarado que el concepto de figura pública *"no necesariamente se limita a los líderes y a otras personas destacadas de la sociedad. Cualquier ciudadano privado·puede cualificar como tal si adquiere el grado de notoriedad necesaria."* Garib Bazán v. Clavell, 135 D.P.R., a la pág. 483; *Clavell v. El Vocero de P.R.,* 115 D.P.R., a la pág. 693; *García Cruz v. El Mundo, Inc.,* 108 D.P.R., a la pág. 180.

Se trata de una cuestión de derecho. *Garib Bazán v. Clavell*, 135 D.P.R., a la pág. 485; *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 270 (1984); *García Cruz v. El Mundo, Inc.,* 108 D.P.R., a la pág. 183; *Rosenblatt v. Baer*, 383 U.S., a la pág. 84. En la misma se puede descansar en el conocimiento judicial. *Garib Bazán v. Clavell*, 135 D.P.R., a la pág. 484; *Clavell v. El Vocero de P.R.,* 115 D.P.R. a la pág. 694.

El Tribunal Supremo de Puerto Rico ha señalado que las figuras públicas gozan de los siguientes rasgos: (1) especial prominencia en los asuntos de la sociedad, (2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público y (3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas. *Garib Bazán v. Clavell*, 135 D.P.R., a las págs. 482-483; *Pueblo v. Olivero Rodríguez*, 112 D.P.R., a la pág. 374; *Torres Silva v. El Mundo, Inc.,* 106 D.P.R. 415, 422 (1977).

No se debe adjudicar esta cuestión a base de un análisis abstracto del status de la persona afectada. El contexto específico en que se da la manifestación tiene mucha relevancia. Debe considerarse la naturaleza de la declaración difamatoria, el auditorio a que se dirige, los intereses que se sirven o vulneran y la relación funcional entre estos factores. *Garib Bazán v. Clavell*, 135 D.P.R., a la pág. 483; *Soc. de Gananciales v. López*, 116 D.P.R. 112, 117 (1985).

Un criterio importante es el factor territorial. *Maldonado y Negrón v. Marrero y Blanco*, 121 D.P.R. 705, 716 (1988); *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 63 (1988); *Pueblo v. Olivero Rodríguez*, 112 D.P.R., a la pág. 375.

El eje crítico de la determinación lo es la importancia o interés público del asunto o de la controversia de que se trate. *Garib Bazán v. Clavell*, 135 D.P.R., a la pág. 483; *Ocasio v. Alcalde Mun. de Maunabo,* 121 D.P.R. a la pág. 62; (1988). El enfoque es funcional. *Maldonado y Negrón v. Marrero y Blanco,* 121 D.P.R., a la pág. 716.

En la situación de autos, según hemos visto, la prueba desfilada ante el Tribunal de Primera Instancia tendió a reflejar que el perjudicado efectivamente había tenido una participación activa en el municipio de Yauco y que era generalmente conocido en dicha comunidad como un militante del P.P.D. La evidencia reflejó que el Sr. Burgos tenía bajo su cargo la diseminación de ideas de tipo político mediante un vehículo de altoparlantes que conducía por las zonas rurales y urbanas de Yauco, haciendo propaganda a candidatos del P.P.D., incluyendo el candidato que había competido con el peticionario en las últimas elecciones. El perjudicado pasquinaba y promovía las candidaturas de las figuras de su partido. Según la prueba desfilada, se manifestaba en lugares públicos en contra del peticionario.

La prueba reflejó que el perjudicado desempeñaba un rol importante en los mítines del P.P.D., haciéndose cargo del sonido. En estas ocasiones, el perjudicado hablaba a la asamblea, sirviendo de maestro de ceremonias en la presentación de oradores.

Somos de la opinión de que las actividades descritas efectivamente cualificaban al perjudicado como una *"figura pública"* dentro del municipio de Yauco, asociada al partido opositor al del peticionario.

La distinguida Sala de Primera Instancia, según hemos visto, consideró que las actividades llevadas a cabo

por el Sr. Burgos resultaban insuficientes para que se considerase a éste como una figura pública. El Tribunal concedió gran peso al hecho de que el Sr. Burgos no se había postulado para una posición electiva.

Desde luego, si el perjudicado hubiera aspirado a una posición electiva, ello, de ordinario, sería suficiente para cualificarlo como una figura pública. *García Cruz v. El Mundo, Inc.,* 108 D.P.R., a las págs. 179-180; véase, *Monitor Patriot Co. v. Roy,* 401 U.S. 265 (1971).

No pensamos, sin embargo, que el hecho de que el Sr. Burgos no hubiera sido, como tal, candidato a posición electiva alguna por su partido le reste prominencia a su actividad política en el municipio de Yauco. El Tribunal Supremo de Puerto Rico, según hemos visto, ha aclarado que el concepto de figura pública *"no necesariamente se limita a los líderes y a otras personas destacadas de la sociedad"*, sino que *"[c]ualquier ciudadano privado puede cualificar como tal si adquiere el grado de notoriedad necesaria." Garib Bazán v. Clavell,* 135 D.P.R., a la pág. 483; *Clavell v. El Vocero de P.R.,* 115 D.P.R., a la pág. 693.

Nuestra tradición política reconoce el rol activo, dentro de comunidades pequeñas y definidas, de personas que ejercen liderato y demuestran iniciativa en actividades de tipo proselitista, sin ocupar, sin embargo, posiciones en las estructuras más altas de los Partidos o aspirar, como tal, a posiciones electivas. Estas personas, aunque podrían no gozar de prominencia a nivel de toda la Isla, resultan muy conocidos en el ambiente político de sus comunidades y tienen una influencia destacada en el quehacer político del país.

La figura del *"líder de barrio"*, por ejemplo, resulta conocida para cualquiera que esté familiarizado con la actividad política de nuestro país. Este tipo de figura goza de una menor jerarquía en la estructura de los partidos políticos de Puerto Rico. No por ello, su actividad política resulta inferior a la de los líderes o candidatos a posiciones electivas, ni es menor su grado de trabajo o compromiso con los ideales que defienden sus agrupaciones políticas. La diferencia generalmente se encuentra en el campo de acción más restringido de las actividades de este tipo de líderes secundarios, las que usualmente se limitan a comunidades más pequeñas.

Dentro de estas comunidades, dichas personas gozan de prominencia efectiva y tienen la capacidad para influir en el pensamiento y acciones de sus conciudadanos. Dentro de dicho contexto, son *"figuras públicas,"* y es natural que se vean envueltos en controversias públicas con sus adversarios y sean objeto de ataques, motivados por consideraciones políticas, aunque no sean candidatos de sus partidos a posiciones electivas.

En la situación de autos, conforme a la prueba desfilada, consideramos que el Sr. Burgos Montes constituye una *"figura pública"* dentro del Municipio de Yauco, conocido en dicha comunidad, por sus actividades políticas, como un destacado simpatizante del P.P.D. y opositor de la administración del peticionario. Cf., *Maldonado y Negrón v. Marrero y Blanco,* 121 D.P.R., a la pág. 718 (*"su prominencia en Morovis fue producto de haberse involucrado, por años, intensamente en actividades político-partidistas y alcanzado el puesto de Vicepresidente del P.P.D. en dicha municipalidad. ... [S]u participación en la política constituye la razón principal para situarlo en la dimensión de figura pública para fines del requisito de malicia real"*).

En su resolución, según hemos visto, la distinguida Sala recurrida expresó la razonable preocupación de que una interpretación amplia del concepto de *"figura pública"* en nuestra jurisdicción podría conllevar el conferir dicha caracterización a las numerosas personas que tienen una reducida, si bien consecuente, participación en las actividades políticas de nuestro país. Esta es una preocupación legítima.

Esta claro que el mero *"seguidor"* político, aquella persona cuya actividad en el campo partidista se reduce a comparecer asiduamente a los mítines y asambleas de su agrupación, o a la actividad incidental de pasquinar o recoger dinero a favor del candidato de su preferencia, no por ello adquiere una prominencia social que conlleve la pérdida de su carácter de ciudadano privado. Cf., *González Martínez v. López,* 118 D.P.R., a la pág. 195.

En la situación de autos, sin embargo, las actividades llevadas a cabo por el Sr. Burgos Montes reflejan que no se trata de un mero *"seguidor"*, sino de una persona que consecuentemente asumía gestiones de mayor responsabilidad e importancia para su colectividad política y que hacía expresiones públicas de crítica contra la administración del peticionario. Dentro contexto del Municipio de Yauco, es una persona de prominencia en el ambiente político de dicha municipalidad.

Es evidente, en este sentido, que la animosidad el peticionario y el Sr. Burgos tiene más bien un origen político. Las manifestaciones del peticionario, según hemos visto, tuvieron como trasfondo un incidente de tipo político ocurrido entre los seguidores del peticionario y el Sr. Burgos. Hemos tomado conocimiento de que existieron otros incidentes, relacionados a las actividades políticas del Sr. Burgos, que dieron origen a una reclamación judicial por daños y perjuicios presentada por éste contra el peticionario, así como de otras demandas presentadas por el Sr. Burgos contra el municipio para el pago de servicios prestados por él a la administración anterior.

Por su contexto, la controversia entre las partes tiene un marcado colorido ideológico. La raíz de las desavenencias entre el peticionario y el Sr. Burgos yace, en última instancia, en que ambos tienen ideas distintas sobre cuál debe ser el futuro político de nuestra jurisdicción y cómo debe gobernarse el municipio al que ambos pertenecen. Se trata de un área de indudable interés constitucional, donde es común que los adversarios se ataquen y cuestionen su honestidad, levantando señalamientos que podrían no estar sustentados por evidencia material, pero que responden a la existencia del choque de sus ideales políticos.

Aunque de indudable contenido difamatorio, las expresiones realizadas por el peticionario constituyen más bien un ataque a un conocido adversario político de su administración en Yauco. Nuestro ordenamiento protege este tipo de expresiones porque se reconoce la necesidad de que exista un *"debate robusto y abierto sobre la cosa pública, debate que... bien puede incluir ataques vehementes, caústicos y a veces desagradablemente cortantes."* Soc. de Gananciales v. López, 116 D.P.R., a la pág. 115.

Es importante señalar que las expresiones del peticionario fueron realizadas ante un periodista de una estación de radio en Yauco, por lo que resultaba razonable anticipar que la mayor parte de la audiencia que escucharía la entrevista habría de conocer a las personas envueltas. Esto es, el medio empleado por el peticionario para realizar su ataque al Sr. Burgos fue proporcionado al carácter geográficamente limitado de las actividades políticas del Sr. Burgos. En estas circunstancias, somos de la opinión que las expresiones imputadas al peticionario efectivamente gozan de protección constitucional por haber sido dirigidas las mismas a un adversario político, que resulta ser una figura pública, dentro del contexto del Municipio de Yauco, habiendo estado principalmente dirigidas dichas expresiones a personas que resultaban ser electores en dicho municipio y que estaban en posición de conocer a las personas envueltas en la controversia. ■

Reconocemos que las imputaciones realizadas por el peticionario al Sr. Burgos son indudablemente serias e hirientes a su reputación. El Sr. Burgos se queja de que las mismas son falsas. Aun siendo ese el caso, las mismas no dejan de gozar de protección por nuestro ordenamiento.

Según ha expresado el Tribunal Supremo de Puerto Rico:

*"[L]as manifestaciones erróneas son inevitables en la discusión de los asuntos públicos. El propósito de la garantía constitucional es mantener un clima abierto para la discusión franca y vigorosa de los asuntos de interés público y de la conducta y ejecutoria de los funcionarios públicos. ... Por eso, la libertad de prensa incluye tanto la manifestación veraz como la incorrecta."*

Zequeira Blanco v. El Mundo, Inc., 106 D.P.R. 432, 436 (1977).

El Tribunal Supremo de Puerto Rico ha sugerido que no resulta apropiado la utilización de preceptos penales para castigar expresiones de contenido hiriente, que pueden ser el resultado de una atmósfera de malestar y rencor entre organizaciones que compiten entre sí. Véase, *Pueblo v. Irizarry Irizarry,* 157 D.P.R. ___ (2002), **2002 J.T.S. 68,** a la pág. 1,115.

Concluimos que la aplicación del Art. 118 del Código Penal al peticionario en este caso resulta inconstitucional, por lo que procede la desestimación de la denuncia en su contra, a tenor con la Regla 64, inciso (a) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(a). ■

Por los fundamentos expresados, se expide el auto solicitado y se revoca la resolución recurrida. En su lugar, se decreta la desestimación de la denuncia.

Lo pronunció y lo manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 148

**1.** Tomamos conocimiento judicial de que, en la fecha en cuestión, el Partido Popular Democrático celebró primarias en Yauco. También tomamos conocimiento judicial de que el Sr. Burgos Montes había presentado una demanda en cobro de dinero contra el Municipio de Yauco, por servicios supuestamente rendidos a dicho municipio previo a que el peticionario tomara posesión como alcalde, los cuales la administración del peticionario se negó a pagar, caso civil núm. JCD2002-0697 ante el Tribunal de Primera Instancia, Sala Superior de Ponce. Posteriormente a los hechos de este caso, el Sr. Burgos instó otra reclamación similar contra el Municipio de Yauco, por servicios prestados y no satisfechos, caso civil núm. JCD2003-0289.

**2.** César Vivaldi Rodríguez, quien fue candidato en las primarias celebradas por el P.P.D. en Yauco el 11 de agosto de 2002. Tomamos conocimiento judicial de que en octubre de 2002, el Sr. Burgos presentó una reclamación de daños y perjuicios contra el peticionario y otros funcionarios del Municipio de Yauco, ante el Tribunal de Primera Instancia, Sala Superior de Ponce, caso civil núm. JDP2002-0505. Se alega en dicha demanda que en la noche del 24 de julio de 2002, el Sr. Burgos y otras personas se encontraban *"instalando propaganda política del candidato César Vivaldi Rodríguez, para la primaria a celebrarse el día 11 de agosto de 2002",* cuando fueron ilegalmente intervenidos por miembros de la Guardia Municipal de Yauco, quienes los detuvieron y arrestaron. Se alega además, que en una actividad política celebrada al día siguiente, el peticionario Abel Nazario mencionó a las personas intervenidas por nombre y apellido, imputándoles falsamente, *"haber vandalizado una propaganda del Municipio de Yauco."*

**3.** Viz, Pedro Jaime Torres, candidato del P.P.D. a la alcaldía de Yauco durante las elecciones de 2000, que fue derrotado por el peticionario.

**4.** Yo puedo tener la intención de difamar a un funcionario público o una figura pública, imputándole la comisión de un delito. Bajo el estándar adoptado en *New York Times v. Sullivan,* esta intención es insuficiente, si yo no tengo conocimiento de la falsedad de la imputación o si estoy consciente de que la misma probablemente es falsa y actúo con grave menosprecio de lo anterior. 376 U.S., a las págs. 279-280.

**5.** El peticionario, según hemos visto, ha planteado que la prueba presentada por el Ministerio Público resultaba insuficiente para sostener la determinación de causa probable para su arresto. Dado el estándar menor de prueba requerido para dicho acto, consideramos inmeritorio este planteamiento del peticionario. No existía ausencia total de prueba para sostener los cargos contra el peticionario. *Pueblo v. Andaluz Méndez,* 143 D.P.R. 656, 662 (1997); *Pueblo v. Rivera Alicea,* 125 D.P.R. 37, 42-43 (1989); *Vázquez Rosado v. Tribunal Superior,* 100 D.P.R. 592, 594 (1972); véase, además, *Pueblo v. Jiménez Cruz,* 145 D.P.R. 803 (1998).

**6.** En su comparecencia, el Estado solicita la desestimación del recurso del peticionario, por la omisión de dicha parte de

incluir, junto con su recurso, ciertos documentos supuestamente esenciales para la adjudicación de la controversia, contrario a lo requerido por la Regla 34, inciso (E) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXII-A, R. 34(E). Hemos considerado los documentos en cuestión, y entendemos que los mismos no son indispensables para la adjudicación de la presente controversia. Véase, *Cruz Castro v. Ortiz Montalvo,* 154 D.P.R. ___ (2001), **2001 J.T.S. 62**; *Córdova Ramos v. Larín Herrera*, 151 D.P.R. ___ (20000), **2000 J.T.S. 92**, a la pág. 1,225; *Codesi, Inc. v. Municipio de Canóvanas*, 150 D.P.R. (2000), **2000 J.T.S. 61**, a la pág. 884.