# 2004 DTA 95

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE SAN JUAN

JOSÉ GONZÁLEZ, BRENDA DE JESÚS, Y LA SOCIEDAD LEGAL DE GANANCIALES
COMPUESTA POR ELLOS, SAN JUAN CONSTRUCTION & PAINTING, INC.
Demandantes-Recurridos

v.

CORPORACIÓN ABC, TELEONCE, ET AL., CYD MARIE FLEMING Y GLAMARIS VALENTÍN,
Y SUS RESPECTIVAS SOCIEDADES DE BIENES GANANCIALES; LINDA HERNÁNDEZ,
MILLIE GIL Y NURIA G. SEBAZCO
Demandados-Peticionarios

LUIS CARRILLO, FULANA DE TAL Y LA SOCIEDAD DE BIENES GANANCIALES
COMPUESTA POR AMBOS
Demandados-Recurridos

Núm. KLCE-03-01181

San Juan, Puerto Rico, a 22 de abril de 2004

Panel compuesto por su Presidenta, la Juez Rodríguez de Oronóz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Peñagarícano Soler, Jueza Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Raycom National, Inc. (Teleonce), Cyd Marie Fleming, Glamaris Valentín y su Sociedad Legal de Gananciales; Linda Hernández, Millie Gil y Nuria G. Sebazco (en adelante, Raycom), mediante auto de *Certiorari* presentado el 25 de septiembre de 2003. Nos solicita revisemos la *Resolución* emitida el 14 de agosto de 2003, por el Tribunal de Primera Instancia (en adelante, TPI), notificada el 29 de agosto de 2003, en la acción civil núm. K DP00-0903 (804). Mediante la aludida Resolución, el foro recurrido denegó la moción de sentencia sumaria presentada por los peticionarios.

Habiendo analizado los escritos presentados por las partes, a la luz del derecho aplicable, resolvemos confirmar la *Resolución* recurrida.

### I

El 21 de febrero de 2000, Teleonce (canal 11 y 9 en Puerto Rico) difundió el programa televisivo *"Las Noticias Extra"*. Como parte del mismo, de conformidad con la transcripción del programa, se hicieron las siguientes manifestaciones:

*"Millie Gil*
*Reportera*

*¿Ha empañetado o pintado una pared alguna vez en su vida? ¿Se siente capaz de levantar una columna de bloques o de madera? ¿Sabría poner ventanas, puertas o losetas a una casa?*

*Si ha contestado que si a algunas (sic) de estas preguntas, usted podría ser elegible para participar en las subastas de por lo menos 100 proyectos de modernización de residenciales[....] Pero no piense que va de albañil o carpintero, usted sería 'el contratista', si gana la subasta y no puede cumplir con el trabajo...abandone la obra...y el que venga que arree.*

*Si le parece un chiste de mal gusto, sepa que no lo es, eso ya pasó en tres proyectos de modernización en Ponce, Caguas y Maunabo donde unas cien familias esperan, desde hace dos años que le entreguen sus viviendas. Y seguirán esperando porque el contratista se declaró en quiebra[....]*

*Millie Gil*
*Reportera'*

*Para estos trabajos de construcción, la Administración de Vivienda Pública y la privatizadora CM Services concedió la subasta inicial a la compañía San Juan Construction and Painting, de José González Alonso. Una empresa que según supo Las Noticias Extra no tenía experiencia en proyectos de esa envergadura[....]*

*[....] Millie Gil*
*Reportera*

*Sin embargo, un año después de iniciada la modernización del residencial Ponce de León, en Ponce, el contratista abandonó la obra argumentando incapacidad económica.*

*[....] Millie Gil*
*Reportera*

*Las Noticias Extra hizo una inspección ocular de la obra inconclusa en compañía del Ingeniero Carrillo y como verá, su evaluación contrasta dramáticamente con el conformismo institucional. Para empezar, en un año, San Juan Construction sólo completó el siete por ciento de la obra en los primeros dos edificios, mientras el contrato exigía la entrega de un edificio por mes.*

*Ing. Carrillo*

*Al proyecto le falta un 93 por ciento que es una cantidad..., sabes un contratista que se declara en default como una dice a menos de un 10 por ciento, algo grave hay...".* ■

Así pues, se difundieron expresiones concernientes al alegado incumplimiento de San Juan Construction & Painting, Inc., con un contrato de remodelación para tres residenciales públicos, que ésta suscribiera con el Departamento de Vivienda. San Juan Construction & Painting, Inc., es una corporación privada constituida bajo las leyes del Estado Libre Asociado de Puerto Rico y sus oficiales principales lo son el Sr. José González y la Sra. Brenda de Jesús (en adelante, recurridos). Entre otras expresiones, el reportaje postuló que varios residentes de los referidos complejos de vivienda habían sufrido daños por el alegado incumplimiento de la parte recurrida, al no completar las referidas obras.

El 17 de mayo de 2000, la parte recurrida incoó una demanda por difamación y daños y perjuicios en contra de los peticionarios. Los recurridos alegaron, entre otras cosas, que por razón del aludido reportaje habían sufrido daños económicos, así como daños morales a su reputación. ■ Indicaron, que contrario a lo precisado en el reportaje en controversia, éstos nunca se habían acogido a la Ley de Quiebras. Sostuvieron, además, que eran una compañía con experiencia. Asimismo, en cuanto al proyecto visitado por la reportera Millie Gil en compañía del Ing. Luis Carrillo, los recurridos alegaron, que en contrario a lo expresado, el referido proyecto estaba completado en un 50%. A la vez, adujeron que nunca se habían negado a una entrevista, sino que no habían recibido solicitud alguna al respecto. ■ El 5 de julio de 2000, Raycom presentó su *Contestación a Demanda.* ■ Allí arguyó en síntesis, que los recurridos eran funcionarios públicos por lo cual estaban obligados a probar malicia real en su reclamación. Asimismo, el 28 de julio de 2000, el Ing. Luis Carrillo presentó su contestación a la demanda de autos.

Con fecha de 8 de junio de 2001, Raycom presentó ante el foro de instancia una *Moción en Solicitud de Sentencia Sumaria.* ■ El 6 de julio de 2001, el TPI emitió una *Orden* concediendo treinta (30) días a la parte recurrida para expresarse en torno a la moción sumaria. ■ En atención a ello, con fecha de 28 de agosto de 2001, esta parte presentó una *Oposición a Moción en Solicitud de Sentencia Sumaria.* ■ Con fecha de 6 de septiembre de 2001, Raycom presentó una *Réplica a la Oposición a Moción en Solicitud de Sentencia Sumaria.* **[8]** El 10 de noviembre de 2001, el TPI emitió una *Orden* señalando una vista argumentativa a celebrarse el 19 de diciembre de 2001. ■

Así las cosas, el 23 de abril de 2002 se llevó a cabo la vista argumentativa con relación a los planteamientos de ambas partes sobre la sentencia sumaria solicitada. ■ En la misma, las partes tuvieron oportunidad de presentar sus respectivas posiciones respecto a la aplicabilidad de la figura de funcionario público a la parte recurrida. El 26 de junio de 2002, los recurridos presentaron un *Suplemento a oposición a Moción en Solicitud de Sentencia Sumaria.* ■ El 11 de julio de 2002, Raycom presentó su *Contestación a Suplemento a Moción en Solicitud de Sentencia Sumaria.* ■ Posterior a ello, el 14 de agosto de 2003, el foro recurrido emitió la *Resolución* de autos. ■ Por la misma, el TPI declaró No Ha Lugar a la moción de sentencia sumaria solicitada por Raycom. Esta resolución fue notificada el 29 de agosto de 2003.

No conforme con lo anterior, el 25 de septiembre de 2003, Raycom acudió ante nos mediante *Petición de Auto de Certiorari*. En la misma, se levantaron los siguientes señalamientos de error:

*"ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS DEMANDANTES NO PUEDEN SER CONSIDERADOS COMO 'FUNCIONARIOS PÚBLICOS' PARA PROPÓSITOS DE LA ADJUDICACIÓN DE UNA SOLICITUD DE SENTENCIA SUMARIA EN UN PLEITO POR DIFAMACIÓN."*

*"ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA FUNDAMENTADA EN LA AUSENCIA DE PRUEBA CLARA, ROBUSTA Y CONVINCENTE DE QUE LOS PETICIONARIOS ACTUARON CON MALICIA REAL AL DISEMINAR LA INFORMACIÓN PERIODÍSTICA OBJETO DE DEMANDA."*

El 7 de noviembre de 2003, emitimos *Resolución* concediendo treinta (30) días a la parte recurrida para presentar escrito fijando su posición. El 26 de noviembre de 2003, el ing. Luis Carrillo presentó una *Moción en Cumplimiento de Resolución y Solicitando Inclusión con la Parte Demandada-Peticionaria*. El 4 de diciembre de 2003, declaramos Ha Lugar la anterior moción. El 22 de diciembre de 2003, la parte recurrida presentó su *Moción en Cumplimiento de Orden y en Oposición a Solicitud de Certiorari*. El 30 de diciembre de 2003, Raycom presentó una *Réplica a la Oposición a Solicitud de Certiorari*.

## II

*"Se dice comúnmente que los derechos humanos son `fundamentales´. Esto únicamente puede implicar que son importantes; que la vida, la dignidad y otros elevados valores humanos dependen de ellos. No significa que sean absolutos y que nunca pueden ser extractados por ningún motivo y bajo ninguna circunstancia; significa que dan derecho a una protección especial, gozando por lo menos de una presunta inviolabilidad a prima facie, cediendo únicamente a intereses sociales obligados, en circunstancias limitadas, durante tiempo y motivos limitados, y por medios limitados."* Louis Henkin, *Los Derechos del Hombre Hoy* (México: Editores Asociados, M.S.A., EDAMEX, 1981, trad. Por Aurora Merino del libro *The Rights of Man Today*, Westview Press: 1978), págs 16-18., según citado en Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, Vol. II, 1997, a la pág. 767.

La Constitución del Estado Libre Asociado de Puerto Rico dispone en su Sección 4 del Artículo II, que: *"No se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios."* Desde su concepción, nuestra Constitución ha sido interpretada como una de factura más ancha que la Carta Magna Federal, reconociendo de manera más abarcadora la extensión de los derechos fundamentales. *Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos*, **2000 J.T.S. 83**; *López Vives v. Policía*, 118 D.P.R. 219 (1987). El lenguaje de avanzada de la Ley Suprema de nuestro pueblo encumbra el respeto por la libertad del hombre, la cual se ha de manifestar plenamente por medio de la expresión. ▮

En Puerto Rico se ha defendido vigorosamente el derecho de todo ciudadano a expresarse de manera escrita, verbal o simbólica; se ha reconocido así la importancia intrínseca que atañe a las libertades del hombre. *Asoc. de Medicina Podiátrica v. Romero Bassó*, **2002 J.T.S. 87**; *Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, supra*; *Ramírez de Ferrer v. Mari Brás*, 144 D.P.R. 141 (1997). En numerosas oportunidades, el Tribunal Supremo de Puerto Rico ha manifestado su deber insoslayable de defender el ejercicio de la libre expresión. Al analizar la jurisprudencia pertinente, hallamos que las decisiones del Tribunal Supremo de Puerto Rico han versado en su gran mayoría sobre la libertad de palabra; específicamente en su modalidad de contenido de la expresión. *Asociación de Maestros de Puerto Rico v. Srio. del Departamento de Educación*, **2002 J.T.S. 64**; *Muñiz v. Adm. del Deporte Hípico*, **2002 J.T.S. 8**; *U.N.T.S. v. Srio. de Salud*, 133 D.P.R. 153 (1993); *Aponte Martínez v. Lugo*, 100 D.P.R. 282 (1971).

El énfasis en la protección al contenido de la expresión obedece a la posición de primacía que ocupa el contenido dentro del esquema constitucional. Así, ante cualquier reglamentación o actuación gubernamental que censure el contenido de expresión, los tribunales nos vemos compelidos a atender la misma con cautela y celosía. *Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, supra.* Será necesario, si lo ameritan los hechos, utilizar en ocasiones el escrutinio estricto para salvaguardar el interés de libertad que sea amenazado. *Muñiz v. Adm. del Deporte Hípico, supra.* No obstante lo anterior, los derechos fundamentales no son absolutos. En ocasiones, han de ceder ante otros intereses, de ser así justificado y siempre en aras de la menor restricción posible. *Asociación de Maestros de Puerto Rico v. Srio. del Departamento de Educación, supra*; *Hernández Estrella v. Junta de Apelaciones del Sistema de Educación Pública*, 147 D.P.R. 840 (1999); *Mari Brás v. Casañas*, 96 D.P.R. 15 (1968).

Como mencionáramos con anterioridad, la libertad de prensa está consagrada en la Sección 4 del Artículo II de nuestra Constitución. *Pérez v. Criado*, **2000 J.T.S. 105**. A través del desarrollo jurisprudencial de la libertad de prensa, se han identificado varias modalidades contenidas en esta doctrina; así la censura previa, el efecto disuasivo (*chilling effect*) y el derecho a obtener información son las de mayor envergadura al considerar la libertad de prensa. ▉

Mientras, en la esfera federal la Constitución de los Estados Unidos de América dispone en su Primera Enmienda: ▉

*"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."*

El Tribunal Supremo Federal ha reconocido la importancia de la libertad de prensa ante los intentos de socavarla mediante la censura y las restricciones indebidas. Así por ejemplo, en *New York Times Co. v. United States*, 403 U.S. 713 (1971), el Tribunal permitió la publicación del material en controversia ("*The Pentagon Papers*"), negándose a acoger el planteamiento del gobierno que reclamaba la censura del mismo por razón de seguridad nacional. ▉ Asimismo, ha reconocido el derecho de la prensa a atender los procedimientos criminales. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).

Nuestro Tribunal Supremo reiteradamente se ha pronunciado en torno a la vital importancia que constituye la labor de la prensa en nuestra sociedad. Así, reitera que "*nuestra constitución y la federal sitúan la libertad de prensa como derecho fundamental...su esencia estriba en impedir la restricción arbitraria del contenido de publicaciones, así como el medio, lugar y manera que se realicen, no importa su veracidad, popularidad o simpatía...conlleva la libertad de los periódicos para decidir lo que quieren imprimir y la protección al público de recibir la información tal y como es publicada*". (Citas omitidas). *Pérez v. Criado, supra*, a la pág. 1363.

Conforme lo mencionado, y como dijéramos, nuestra Constitución es de factura más ancha que la Constitución Federal, y contiene una visión más abarcadora y protectora de los derechos fundamentales, entre ellos, la libertad de expresión o de prensa. *Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos y otros, supra.*

La Constitución del Estado Libre Asociado expone en lo concerniente, "*[l]a dignidad del ser humano es inviolable....*". Art. II, Sec. 1. Es de evidente plusvalía, y así se ha reconocido, el derecho fundamental que cobija a las personas contra ataques abusivos a la honra y la inviolabilidad de la dignidad del ser humano. Así pues, "*[e]l derecho a la intimidad es de tal envergadura que el mismo opera ex propio vigore, y puede hacerse valer entre personas privadas...Es por ello que la protección opera tanto frente al Estado como ante personas particulares.*" Citas omitidas. *Castro Cotto v. Tiendas Pitusa*, **2003 J.T.S. 101**, a la pág. 1131; Véase además: *Arroyo v. Rattan Specialties*, 117 D.P.R. 35 (1986).

A su vez, en el ámbito federal, el Tribunal Supremo ha dictaminado que existe un derecho a la privacidad bajo el palio de la Constitución Federal. Como cuestión de hecho, el Tribunal determinó que la Enmienda XIV alberga el derecho a la intimidad, a base del concepto de libertad personal allí encumbrado. *Roe v. Wade*, 410 U. S. 113 (1973); *Whalen v. Roe*, 429 U.S. 589 (1977); *Borucki v. Ryan*, 827 F.2d 836 (1987). Recientemente, el más alto Foro federal decidió que el interés de privacidad de una familia reflejado en que no se publiquen fotos sobre un pariente fallecido en circunstancias misteriosas, derrota el interés público que pueda haber sobre ese asunto. *National Archives and Records Administration v. Favish,* 124 S.Ct. 1570, resuelto el 30 de marzo de 2004. ■■

El Tribunal Supremo de Puerto Rico ha determinado que este fundamental derecho se vulnera, entre otras instancias, cuando se limita la facultad de un individuo de tomar decisiones personales, familiares o íntimas, *Pueblo v. Duarte*, 109 D.P.R. 596 (1980); o cuando se requiere exponer públicamente la vida íntima de una pareja para poder así divorciarse, *Figueroa Ferrer v. E.L.A.,* 107 D.P.R. 250 (1976). Asimismo, el derecho de intimidad y la protección contra ataques abusivos a la honra y la reputación personal se lesiona, cuando la constante presencia de una foto en los medios de comunicación representa una intromisión indebida en la vida familiar. *Colón v. Romero Barceló*, 112 D.P.R. 573 (1982).

Sin embargo, al igual que algunos de los derechos fundamentales, el derecho a la intimidad no es absoluto. *Vega Rodríguez, et als. v. Telefónica de P.R., et als.,* **2002 J.T.S. 58**. Se ha establecido que el criterio rector para extender la protección de la intimidad gravita, en si la persona que lo reclama tiene una expectativa legítima a la intimidad en consideración a los hechos del caso. ■■ *Castro Cotto v. Tiendas Pitusa, supra.*

### III
El Tribunal Supremo Federal resolvió la controversia de *"figura pública"* en *N.Y Times v. Sullivan*, 376 U.S. 254 (1964). En el aludido caso, el Tribunal determinó, en suma, que si la persona afectada por la información alegadamente difamatoria es una figura pública, tendría entonces que probar que esa información fue propagada mediando malicia real. En vista de ello, el Tribunal Supremo de Puerto Rico acogió lo resuelto por el Tribunal Supremo Federal, en torno a las acciones de difamación, al enunciar lo siguiente:

*"New York Times v. Sullivan, marca un nuevo hito en el fortalecimiento de la garantía constitucional de la libertad de prensa al determinar que la publicación de un informe falso o comentarios injustificados relacionados con la conducta oficial de un funcionario público están inmunes de reclamaciones por libelo y gozan de un privilegio restringido, a menos que la información fuera publicada a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. Será necesario de ahí en adelante que el funcionario público demuestre la existencia de malicia real como requisito indispensable para ser indemnizado por daños a su reputación...."*. *Torres Silva v. El Mundo, Inc.,* 106 D.P.R. 415 (1977), a la pág. 421.

Allí mismo, nuestro Tribunal Supremo definió que conforme lo dispuesto en *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), procedía instaurar un sistema de conciliación entre los intereses de prensa y el de reputación de la persona. Así, pues, *"[e]n acciones basadas en libelo, aparte de probar que la información difamatoria sea falsa y que se causen daños reales, existen dos posibilidades respecto a la clasificación de la persona afectada: que sea una figura privada o pública. Bajo la primera, para que la acción prospere, basta con que el afectado establezca la negligencia del autor del escrito o manifestación, según elaborado en el campo del derecho de daños y perjuicios. Sin embargo, respecto a la segunda, es necesario demostrar malicia real...."*. ■■ *González Martínez v. López,* 118 D.P.R. 190 (1987), a la pág. 192. En síntesis, *"...si la persona injuriada no es figura pública, sino privada, las leyes estaduales podrán establecer una norma de responsabilidad menos exigente, siempre que no sea la de responsabilidad sin falta...."*. *Torres Silva v. El Mundo, Inc., supra,* a la pág. 421.

En adición a lo anterior, el Tribunal Supremo de Puerto Rico adoptó la definición enarbolada por el Tribunal Supremo Federal sobre el concepto de figura pública:

*"'En su mayor parte aquellos que alcanzan este status han asumido roles de especial prominencia en los asuntos de la sociedad. Algunos ocupan posiciones de tal poder e influencias que se consideran figura pública para todo propósito. Mas comúnmente, aquellos clasificados como figura pública se han lanzado a la palestra de una controversia pública en particular para influir en las soluciones de las cuestiones envueltas.'"* Torres Silva v. El Mundo, Inc., supra, a la pág. 422, haciendo referencia a lo manifestado en *Gertz v. Robert Welch, Inc.,* 418 U.S 323 (1974). Véanse además: *Oliveras v. Paniagua Diez,* 115 D.P.R. 257 (1984); *Pueblo v. Olivero Rodríguez,* 112 D.P.R. 369 (1982).

Además, el Tribunal Supremo ha expresado que al momento de determinar si un individuo en particular es un funcionario o figura pública, su *"...atención no se ha concentrado tanto en el análisis abstracto del status de la persona afectada como en el contexto específico en que se da la controversia: la naturaleza de la declaración alegadamente difamatoria, el auditorio a que se dirige, los intereses que se sirven o vulneran y la relación funcional entre estos factores...."*. Soc. de Gananciales v. López, supra, a la pág. 117; *Padilla v. WKAQ Radio,* 140 D.P.R. 178 (1996).

Predicado en todo ello, el Tribunal Supremo de Puerto Rico tuvo oportunidad de delimitar *"los rasgos más peculiares de la figura pública"* siendo éstos, a saber:

*"1. especial prominencia en los asuntos de la sociedad.*

*2. capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público; y*

*3. participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas."* Id; *González Martínez v. López,* 118 D.P.R. 190 (1987).

De igual forma, intimó que la figura pública se caracteriza por gozar de un acceso mayor a los medios de comunicación para rebatir la publicación difamatoria, y así enfrentar su efecto. A la vez, el Tribunal acotó que *"... se asume que la figura pública se ha expuesto voluntariamente al riesgo de un juicio más riguroso por el público. Pero tal asunción no se justifica en el caso de las figuras privadas que no se han lanzado a la palestra pública y cuyo interés en la reputación personal no ha sido menguado por ninguna actuación voluntaria de su parte...."* Bastardillas nuestras. *Id.,* a la pág. 422.

Así las cosas, la Ley de Libelo y Calumnia de 1902, 32 L.P.R.A. sec. 3141-3149, establece en lo pertinente:

*"Se entiende por libelo, la difamación maliciosa que públicamente se hace en contra de una persona, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, tendente a exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle en sus negocios..."*. 32 L.P.R.A. sec. 3142.

En tanto, se ha determinado que para que prospere una acción de libelo es necesario probar que: *"...a) la información difamatoria es falsa, b) en el caso de funcionarios o figuras públicas, que se publicó a sabiendas de que era falsa o con grave menosprecio de si era falsa o no, c) en el caso de la persona privada, que la publicación se hizo negligentemente, y d) que se causaron los daños reales."* Torres Silva v. El Mundo, Inc., supra, a la pág. 427; *Villanueva v. Hernández Class,* 128 D.P.R. 618 (1991).

Por otra parte, sabido es que la Regla 36.3 de las de Procedimiento Civil permite a un tribunal dictar sentencia sumaria en aquellos casos en que *"las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente"*. 32 L.P.R.A. Ap. III, R. 36.3.

Este mecanismo procesal es un remedio discrecional extraordinario que se concederá solamente en casos claros en los cuales no exista una controversia real sustancial sobre hechos materiales. *García Díaz v. Darex P.R. Inc.*, 148 D.P.R. 364 (1999); *Piñero González v. A.A.A.*, 146 D.P.R. 890 (1998); *PFZ Properties, Inc. v. General Accident Insurance Co.*, 136 D.P.R. 881 (1994). Su propósito consiste en agilizar los procedimientos judiciales mediante la resolución justa y rápida de un pleito el cual se limita a la aplicación del derecho a unos hechos no controvertidos. *Pardo Santos v. Sucn. de Jorge Stella*, 145 D.P.R. 816 (1998); *PFZ Properties, Inc. v. General Accident Insurance Co., supra.*

El Tribunal Supremo de Puerto Rico ha establecido que no es aconsejable utilizar el mecanismo procesal de sentencia sumaria en casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, y cuando el factor credibilidad sea esencial. Véanse, *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994); *Rodríguez Meléndez v. Supermercados Amigo, Inc.*, 126 D.P.R. 117 (1990); *García López v. Méndez García*, 88 D.P.R. 363 (1963).

La parte promovente tendrá que demostrar la *"inexistencia de una controversia real sobre todo hecho material pertinente que a la luz del derecho sustantivo aplicable determinaría una sentencia a su favor como cuestión de ley".* *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83 (1987), a la pág. 86. El Tribunal debe quedar convencido de la inexistencia de controversia sobre hechos materiales y que lo que resta es aplicar el derecho. *Roig Commercial Bank v. Rosario Cirino*, 126 D.P.R. 613 (1990). Asimismo, el Tribunal podrá dictar sentencia en contra de la parte promovente si como cuestión de derecho procede que la misma se dicte a favor del promovido. *Piñero González v. A.A.A., supra; PFZ Properties, Inc. v. General Accident Insurance Co., supra.*

Es preciso destacar que para derrotar una moción de sentencia sumaria, no basta con la presentación de meras alegaciones; la parte promovida deberá presentar documentación que sitúe en controversia los hechos aludidos por el promovente de la acción. *Audiovisual Language v. Sistema de Estacionamiento*, 144 D.P.R. 563 (1997). Véanse además, *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); *Tello, Rivera v. Eastern Airlines, supra.* No obstante, el hecho de no presentar los referidos documentos no implica que de forma automática proceda la sentencia sumaria, pues ésta sólo deberá dictarse en casos claros. Además, cualquier duda sobre si un hecho ha sido o no contradicho, deberá resolverse en contra del promovente.

Es menester subrayar que los casos en donde se presente una solicitud de sentencia sumaria, se han de atender conforme las figuras involucradas. Así pues, en los casos que estén envueltos funcionarios o figuras públicas, el tribunal deberá dictar sentencia a favor de la parte demandada, a menos que este foro determine a base de prueba que la parte demandante puede probar malicia real. *Villanueva v. Hernández Class, supra.*

De igual modo, pero en casos de personas privadas, se ha expuesto que éstos tienen igual carga de prueba. *"... [L]a diferencia estriba en el hecho de que, debido a que no se han lanzado voluntariamente a la 'palestra pública',...las 'personas privadas' sólo vendrán obligadas a demostrar que cuentan con prueba suficiente para establecer que medió negligencia por parte del periódico en la publicación de la noticia difamatoria...".* Énfasis suprimido. *Id.*, a la pág. 644.

Contando con la comparecencia de las partes, y analizada la controversia de marras bajo el marco doctrinal previamente esbozado, nos hallamos en posición de resolver. Lo hacemos.

## IV

Por estar íntimamente relacionados entre sí, discutiremos en conjunto los errores señalados.

Contrario a lo argüido por la peticionaria, con el paso del tiempo, el Tribunal Supremo de los Estados Unidos ha restringido la categoría de individuos que han de considerarse funcionarios o figura pública. Así lo reflejan las decisiones pertinentes al caso de autos. ■ A modo de ejemplo, en *Hutchinson v. Proxmire*, 443 US 111 (1979),

un profesor que realizaba estudios médicos demandó a un senador de los Estados Unidos, luego de que este último se refiriera a los aludidos estudios como un desperdicio de fondos públicos, entre otras cosas. Como defensa, el senador levantó que la Cláusula de expresión o debate cubría sus expresiones, y que el profesor era un funcionario o figura pública. De entrada, el Tribunal Supremo Federal enunció que desde *New York Times Co. v. Sullivan, supra*, esa Corte ha perseguido definir el acomodo requerido para asegurar el debate vigoroso de asuntos de interés público, conforme lo ideó la Primera Enmienda; a la vez que se protege la reputación de los individuos.

A su vez, revalidó la definición de figura pública plasmada en *Gertz v. Robert Welch, Inc., supra*, a saber: *"[f]or the most part, those who attain this status [of public figure] have assumed roles of special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment." Hutchinson v. Proxmire, supra*, a la pág. 134.

Luego, en su aplicación del referido estándar, el Tribunal resolvió que el profesor no cumplía con los requisitos de figura pública. Más aún, expresó de forma específica que el hecho de que Hutchinson recibiera fondos públicos para sus investigaciones, no lo convertía de por sí en una figura pública. Acotó en cuanto a ello:

*"Hutchinson did not thrust himself or his views into public controversy to influence others. Respondents have not identified such a particular controversy; at most, they point to concern about general public expenditures. But that concern is shared by most and relates to most public expenditures; it is not sufficient to make Hutchinson a public figure. If it were, everyone who received or benefited from the myriad public grants for research could be classified as a public figure –a conclusion that our previous opinions have rejected. The 'use of such subject-matter classifications to determine the extend of constitutional protection afforded defamatory falsehoods may too often result in an improper balance between the competing interests in this area.'"* Bastardillas nuestras. *Id.*, a la pág. 135, citando a *Time, Inc. v. Firestone*, 424 U.S. 448 (1976).

Ciertamente, en la esfera federal no existe uniformidad en torno a quiénes han sido definidos como funcionarios públicos, figura pública y lo que constituye una controversia pública. Advero, estas diferencias se han derivado de la definición que esbozara el Tribunal Supremo Federal. *"...while there are widespread differences in how lower appellate courts have defined public officials, public figures, and public controversies, those definitions, at least, were based on relatively clear guidance from the Supreme Court."* W. Wat Hopkins, *The Involuntary Public Figure: Not So Dead After All*, 21 Cardozo Arts & Ent. L.J. 1 (2003), pág. 2.

Así pues, conforme lo mencionado, una de las características de los funcionarios o figuras públicas lo es su acceso a los medios de comunicación. El Tribunal Supremo Federal ha determinado que la figura pública tiene como primer recurso el *"utilizar las oportunidades a su disposición para contradecir la mentira o corregir el error y entonces minimizar su impacto adverso a la reputación." Gertz v. Robert Welch, Inc., supra*. Traducción nuestra.

De conformidad con lo expresado, el Tribunal Supremo de Puerto Rico enunció en *Soc. de Gananciales v. López, supra*, que los rasgos más peculiares de la figura pública son los siguientes:

*"1. especial prominencia en los asuntos de la sociedad.*

*2. capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público; y*

*3. participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas.*

Con lo anterior en consideración, procede analicemos si debe considerarse a la parte recurrida como un funcionario o figura pública a tenor con la jurisprudencia aplicable en ambas jurisdicciones. Veamos. La controversia medular de marras, pues, estriba en determinar si en ausencia de designio legislativo o jurisprudencial, de forma automática, se puede considerar a individuos privados que hacen negocios con el Gobierno como funcionarios públicos. De contestarse en la afirmativa, sin duda procedería la contemplación de un análisis riguroso de las características que circundan el mismo, con la consabida imposición de prueba de malicia real en acciones incoadas por éstos alegando difamación.

En cuanto al primer requisito, descuella que la parte recurrida es un contratista que mediante el proceso de subasta, contrató con el Gobierno para la remodelación de tres residenciales públicos. En torno al segundo requisito, de los documentos en autos no surge que su posición como contratista le capacitaba para ejercer influencia en la discusión de asuntos de interés públicos. Esto, pues su propósito primordial era el de remodelar estructuras. No surge prueba de que la parte recurrida ocupara un sitial a través del cual pudiera persuadir o influenciar controversias públicas. En cuanto al tercer requisito, definitivamente éste no se consuma, pues los recurridos no son una figura que tenga acceso a los medios de comunicación para refutar la información alegadamente difamatoria.

Asimismo, y en aras de auscultar las características en torno al funcionario público, se colige que los recurridos no son empleados gubernamentales, entiéndase, que no reciben un jornal por parte del Gobierno. Mas, éstos recibieron fondos del erario público al contratar con el Departamento de Vivienda para la remodelación de los residenciales en cuestión. No obstante, de acuerdo a lo intimado por la jurisprudencia federal, el recibir fondos públicos no les convierte en funcionarios públicos *sua sponte*.

Por su parte, a pesar de que el Tribunal Supremo de Puerto Rico decidió que las corporaciones o individuos privados que tengan contratos con el Gobierno están sujetos a investigación por parte del Contralor, el caso que nos ocupa es claramente distinguible. Raycom argumenta que la parte recurrida ha de ser considerada como funcionario público de conformidad con lo resuelto en *HMCA (P.R), Inc. v. Contralor*, 133 D.P.R. 945 (1993). No le asiste la razón. Los hechos del aludido caso pueden resumirse de la siguiente forma: HMCA, una corporación privada, suscribió un contrato con el Departamento de Salud para la operación y administración del Hospital Subregional de Carolina. Posteriormente, la Contralor del Estado Libre Asociado de Puerto Rico inició una investigación del Departamento de Salud relacionada al contrato con HMCA. Ante ello, HMCA objetó lo anterior apoyándose primordialmente en su carácter de corporación privada. Sin embargo, el Tribunal Supremo resolvió que el Contralor es un cargo de estirpe constitucional, que tiene como fin el fiscalizar las cuentas públicas y, por tanto, cuenta con amplios poderes investigativos.

Asimismo, el Tribunal expresó que *"...la autoridad del Contralor para requerir la producción de testimonio o de documentos se determina según su pertinencia con un asunto legítimamente objeto de fiscalización. Ello implica que, cuando el curso de una investigación de los desembolsos públicos así lo exija, el Contralor podrá requerir información de entidades privadas hasta donde sea necesario para esclarecer el asunto en cuestión...."*. *HMCA (P.R.), Inc. v. Contralor, supra*, a la pág. 964.

En fin, el Tribunal declaró que el Contralor puede requerir información de empresas privadas, cuando esto sea en consecución de fiscalizar los fondos públicos. Es menester notar que el caso se circunscribe a delimitar la facultad del Contralor de Puerto Rico, como funcionario de rango constitucional, para investigar corporaciones privadas en su función inspectora.

La parte peticionaria arguye que, *"...el Tribunal Supremo ha brindado dimensiones expandidas a conceptos y nociones que anteriormente podían considerarse como exclusivas del ámbito gubernamental. Tal es el caso, por ejemplo, con una dependencia gubernamental que cumple un rol de rango constitucional que se parece en cierta medida al rol constitucional de la prensa como ente fiscalizador: la Oficina del Contralor...."*. Petición de

*Certiorari*, a la pág. 15 en autos. Además, plantea que este caso y su progenie [*RDT Construction Corp. v. Contralor*, 141 D.P.R. 424 (1996)], han refrendado la facultad de intervenir con personas privadas que hayan contratado o participado de la administración de fondos del fisco. Aun cuando lo anterior es correcto, no así su pretensión de que esta facultad se extendiera de forma automática a entes que no sean la Oficina del Contralor.

La premisa que sostiene el argumento de la parte peticionaria para equiparar el caso de marras con el citado caso, es una inconcusamente errónea. Dentro de la jurisprudencia vigente, nada hay que sostenga la posición de la parte peticionaria. A pesar de que en algunos casos se haya expandido el concepto de funcionario público para recoger a un contratista, ello ha sido decidido en cortes de distrito de naturaleza persuasiva. Huelga decir, pues, que los hechos del caso que nos ocupa, difieren en cuestiones neurálgicas que impiden consintamos una analogía entre los mismos. Pese a que nos encontramos ante corporaciones privadas que recibieron fondos públicos, en aquel caso se refrendó la autoridad del Gobierno, a través del Contralor, para conducir investigaciones a corporaciones privadas. Ciertamente, es razonable que compañías que se benefician de dineros provenientes del erario estén sujetas a fiscalización por parte de la Oficina del Contralor. Empero, el que estén sujetos a la fiscalización de la Oficina del Contralor, no los hace figuras públicas.

A pesar de que se reconoce a la prensa una labor de investigación, que promueva el debate de ideas enérgico y consecuente, ello no puede en lógica y estricto derecho equipararse a las funciones del Contralor. Este último, es un puesto de origen constitucional que en representación del Gobierno, tiene la cimera consecución del manejo circunspecto de fondos públicos. Por otro lado, la libertad de prensa encumbrada en nuestra Constitución, al igual que en la homónima Federal, preceptúa que el Estado no habrá de intervenir irrazonablemente con el derecho de la prensa para reportar e investigar. Es indubitado que esa no es la situación de autos.

Reiteramos. Del análisis a los hechos de autos, es ineluctable concluir que la parte recurrida no reúne los requisitos necesarios para poder considerarse un funcionario público. El hecho de que esta parte haya contratado con el gobierno, de por sí no le atribuye de forma mecánica el carácter de funcionario o figura pública. Contrariamente a lo esgrimido por la parte peticionaria, no hallamos que la prueba refleje que los recurridos ocuparan una posición de *especial prominencia en los asuntos de la sociedad, ni que estuviera ante el ojo público de forma que abandonara voluntariamente su status de persona privada.* Además, no se desprende que el recurrido, incluso, tuviera acceso a medios de comunicación para afrontar las expresiones alegadamente lesivas a su reputación.

En suma, no hallamos fundamentos en el ordenamiento vigente, o en los hechos del caso, que nos muevan a revocar el dictamen recurrido. Subrayamos que por razón de los hechos particulares al caso de marras, no ha de interpretarse nuestra decisión como una disyunción a la consabida protección del derecho de la libertad de prensa. Es innegable que los miembros de la clase periodística en todas sus manifestaciones rinden una labor meritoria y fragosa, que ha de ser ejercitada sin impedimentos irrazonables. Nuestro dictamen no incide en el derecho de investigar y difundir la información noticiosa que éstos entiendan meritoria. Lo resuelto se circunscribe al balance de unos derechos fundamentales, privacidad y libertad de prensa, a la luz del derecho vigente.

Por último, y como corolario de lo antes enarbolado, al determinarse que los recurridos no cumplen con los requisitos de funcionario o figura pública, procedía denegar la moción sumaria según solicitada por Raycom. *"... Existen dos posibilidades respecto a la clasificación de la persona afectada: que sea una figura privada o pública. Bajo la primera, para que la acción prospere, basta con que el afectado establezca la negligencia del autor del escrito o manifestación, según elaborado en el campo del derecho de daños y perjuicios...."*. *González Martínez v. López, supra*, a la pág. 192. Las figuras privadas no están obligadas a probar malicia real conforme lo estipulado en *New York Times, Inc. v. Sullivan, supra*, sino que es suficiente la prueba de negligencia. No se cometieron los errores señalados.

# V

Por los fundamentos anteriormente expresados, se confirma la *Resolución* recurrida.

Así lo acordó y lo manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 2004 DTA 95

1. Véase, *Transcripción, Lunes, 21 de febrero de 2000, Las Noticias Extra*, folios num. 8-9 en Apéndice de autos.

2. Véase, *Demanda*, folio núm. 1 en Apéndice de autos.

3. *"Ni la compañía aseguradora, ni el contratista que supervisaba la reconstrucción del residencial Juan Ponce de León, accedieron a una entrevista en cámara...."*. Véase, Transcripción, *supra*, folio núm. 11 en Apéndice de autos.

4. Véase, folio núm. 13 en Apéndice de autos.

5. Véase, folio núm. 21 en Apéndice de autos.

6. Véase, folio núm. 160 en Apéndice de autos.

7. Véase, folio núm. 161 en Apéndice de autos.

8. Véase, folio núm. 187 en Apéndice de autos.

9. Véase, folio núm. 200 en Apéndice de autos.

10. Véase, *Minuta*, folio núm. 202 en Apéndice de autos.

11. Véase, folio núm. 205 en Apéndice de autos.

12. Véase, folio núm. 209 en Apéndice de autos.

13. Véase, folio núm. 216 en Apéndice de autos.

14. *"Pensar y expresar el pensamiento libremente, por la palabra hablada o escrita, no solamente es lo propio de la naturaleza humana, sino el medio único del progreso humano."* Diario de Sesiones de la Convención Constituyente de Puerto Rico, Tomo I, Equity Publishing Corp., 1961, pág. 389, según citado en *Asoc. de Maestros v. Sec. de Educación*, **2002 J.T.S. 64**.

15. Véase, *Soto v. Secretario de Justicia*, 112 D.P.R. 477 (1982).

16. Señala el tratadista Serrano Geyls, *"Existe un grado considerable de controversia sobre la protección que realmente quiso dársele a las libertades de palabra y prensa con la adopción de la Carta de Derechos de 1791. Algunos opinan que su ámbito no excedía el ya reconocido en el derecho inglés para la época, es decir, la protección contra la censura previa...."*, op. cit., a la pág. 1273.

17. Véase además, *CBS Inc. v. Davis*, 510 U.S. 1315 (1994); *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971); *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175 (1968); *Near v. Minnesota*, 283 U.S. 697 (1931).

18. En este caso, un ciudadano particular peticionó a la Oficina del Investigador Independiente que dirigiera Kenneth Starr, la

entrega de fotografías del cuerpo de Vince Foster luego de éste haberse suicidado. Al momento de cometer suicidio, Vince Foster se desempeñaba como asesor legal del Presidente Clinton.

**19.** *"Para que esa expectativa de intimidad sea razonable, deben concurrir dos elementos: (1) que el reclamante, dentro de las circunstancias de su caso, tenga una expectativa real de que su intimidad se respete (criterio subjetivo), y (2) que la sociedad esté dispuesta a reconocer esa expectativa como legítimo o razonable (criterio objetivo)...."*. Vega Rodríguez, et als. v. Telefónica de P.R., et als., supra, a la pág. 978.

**20.** No empece, la malicia real nunca se presume. *Soc. de Gananciales v. López*, 116 D.P.R. 112 (1985).

**21.** *"...[T]he Supreme Court has indicated that the designation of someone as a public oficial turns on the source of their pay (whether they are a government employee), and their level of responsibility (the Court has repeatedly indicated that not all public employees are public officials for purpose of the New York Times rule). Although the Court has not decided a public official case since Gertz, the lower courts facing the issue have used source of pay and level of responsibility, not voluntary assumption of risk, as the test for public official status...."* Susan M. Gilles, *From Baseball Parks to the Public Arena: Assumption of the Risk in Tort Law and Constitutional Libel Law*, 75 Temp. L. Rev. 231 (2002), pág. 249.

**22.** *Soc. de Gananciales v. López, supra.*

**23.** *Soc. de Gananciales v. López, supra.*

**24.** *Soc. de Gananciales v. López, supra.*